**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** | **)** | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-00760 (RMC) |
| | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 2

  I.   The Public and Legislative Debate Over National Security Surveillance ............... 2

  II.  Plaintiff's FOIA Requests and Requests for Expedited Processing ........................ 6

  III. This Suit and EFF's Attempts to Establish a Schedule for the Prompt Disclosure of these Opinions Without the Court's Involvement ...................................................... 9

ARGUMENT ................................................................................................................. 9

  I.   The Court Has Jurisdiction to Grant the Requested Relief .................................... 10

  II.  EFF is Entitled to Entry of a Preliminary Injunction ............................................ 11

      A.  EFF Will Prevail on the Merits ........................................................................ 11

      B.  EFF Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief ................................................................................................................. 14

      C.  Injunctive Relief Will Not Unduly Burden the Government or Other Interested Parties .............................................................................................................. 18

      D.  The Public Interest Overwhelmingly Favors the Requested Relief ................. 19

  III. The Court Should Order DOJ to Process EFF's FOIA Request Immediately ....... 20

CONCLUSION ............................................................................................................. 23

Plaintiff Electronic Frontier Foundation ("EFF or Plaintiff") respectfully submits this memorandum of points and authorities in support of its motion for a preliminary injunction.

## PRELIMINARY STATEMENT

Over the past year, the public, the press, and government officials have engaged in the most wide-ranging and pointed debate on the propriety of national security surveillance since the proceedings of the Church Committee in the 1970s. Conspicuously absent from that debate have been certain foundational decisions of the Foreign Intelligence Surveillance Court ("FISC"), the Foreign Intelligence Surveillance Court of Review ("FISCR"), and the Supreme Court concerning the legality of the intelligence community's surveillance operations. Without public access to these opinions, a full and informed public debate remains impossible. With Congressional action to reform certain national security surveillance laws now imminent, the need for an informed public debate—one that includes access to these foundational surveillance opinions—is particularly pressing. Without access to these opinions, the public is left in the dark, without the ability to understand the full effect of proposed changes to the law.

This action, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeks the expedited processing and release of certain specific and significant opinions, orders, and other related documents of the FISC, the FISCR, and the Supreme Court. Each of these records concerns certain precedential and otherwise importart decisions of these courts addressing and interpreting various surveillance authorities. The records are currently in the possession of Defendant, the Department of Justice ("DOJ") National Security Division ("NSD").

EFF's FOIA requests—each of which DOJ recognizes as meriting expedited treatment—have now languished for months without any agency action, let alone the release of a single responsive record. DOJ's failure to process EFF's requests violates the law. EFF has availed itself of every means, short of filing this motion, to spur DOJ to release these responsive records in a timely fashion—all without success. However, because time is of the essence, EFF now seeks the Court's expedited consideration of this matter and entry of an order compelling DOJ to process and disclose the requested records within 10 days.

If FOIA's primary purpose—"ensur[ing] an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)—is to have any effect, the statute must be applied with its full force here. EFF respectfully urges the Court to order the government's immediate compliance with the express terms of the statute.

## STATEMENT OF FACTS

### I.   The Public and Legislative Debate Over National Security Surveillance

Since June 2013, the public, the press, and elected officials have engaged in a wide-ranging debate on national security surveillance. Specifically, press reports based on documents leaked by Edward Snowden have afforded the public an unprecedented lens into the intelligence community's surveillance activities—both those undertaken domestically and abroad.

Those press reports, in turn, have raised serious questions about the scope, propriety, and legality of many of the government's surveillance practices. Disclosures concerning the government's use of Section 215 of the USA PATRIOT Act, which the

government relies on to collect millions of Americans' calling records, caused public backlash and alarmed elected officials, many of whom claimed to be unaware of the program's existence. *See, e.g.*, Michael Martinez, '*Shocking' or 'Lawful?' Patriot Act At Center of Verizon Phone Log Controversy*, CNN (June 6, 2013);[1] Peter Finn & Ellen Nakashima, *Obama Defends Sweeping Surveillance Efforts*, Wash. Post (Jun. 7, 2013).[2] Similarly, disclosures concerning government surveillance under Section 702 of the FISA Amendments Act have led to questions about the scope of the collection, its invasiveness, and the integrity of the intelligence community's representations to the public and the federal courts (including the Supreme Court) about its FAA surveillance. *See, e.g.*, Barton Gellman et al., *In NSA-Intercepted Data, Those Not Targeted Far Outnumbered the Foreigners Who Are*, Wash. Post (Jul. 5, 2014);[3] Sari Horwitz, *Justice is Reviewing Criminal Cases that Used Surveillance Evidence Gathered Under FISA*, Wash. Post (Nov. 15, 2013).[4]

Documents released through FOIA litigation have played a critical role in the ongoing public debate as well. Indeed, two cases brought by plaintiff—*EFF v. Dep't of Justice*, 11-cv-5221-YGR (N.D. Cal. Oct. 26, 2012), and *EFF v. Dep't of Justice*, 12-

---

[1] *Available at* http://www.cnn.com/2013/06/06/us/patriot-act-verizon/.

[2] *Available at* http://www.washingtonpost.com/politics/obama-defends-sweeping-surveillance-efforts/2013/06/07/2002290a-cf88-11e2-9f1a-1a7cdee20287_story.html.

[3] *Available at* http://www.washingtonpost.com/world/national-security/in-nsa-intercepted-data-those-not-targeted-far-outnumber-the-foreigners-who-are/2014/07/05/8139adf8-045a-11e4-8572-4b1b969b6322_story.html.

[4] *Available at* http://www.washingtonpost.com/world/national-security/justice-reviewing-criminal-cases-that-used-evidence-gathered-under-fisa-act/2013/11/15/0aea6420-4e0d-11e3-9890-a1e0997fb0c0_story.html.

01441-ABJ (D.D.C. Aug. 30, 2012)—compelled the disclosure of several significant FISC opinions concerning the government's surveillance activities. The opinions have been widely reported by major media outlets, *see, e.g.*, Spencer Ackerman, *NSA Violations Led Judge to Consider Viability of Surveillance Program*, Guardian (US) (Sep. 10, 2013);[5] Charlie Savage & Scott Shane, *Secret Court Rebuked N.S.A. on Surveillance*, N.Y. Times (Aug. 21, 2013),[6] and have added critical information to the public debate. *See, e.g.*, Udall, Wyden Issue Statement on Newly Declassified Foreign Intelligence Surveillance Court Opinions on Bulk Collection of Phone Data (Sept. 10, 2013) ("These documents provide further evidence that bulk collection is not only a significant threat to the constitutional liberties of Americans, but that it is a needless one.").[7]

As a result of this ongoing national debate, significant legislative changes to the nation's surveillance laws appear imminent. Two independent, executive branch review groups have both recommended substantial changes. *See generally* President's Review Group on Intelligence and Communications Technologies, *Liberty and Security in a Changing World* 25-42 (2013); Privacy and Civil Liberties Oversight Board, *Report on the Telephone Records Program Conducted Under Section 215 of the USA Patriot Act and On the Operations of the Foreign Intelligence Surveillance Court* 168-70 (2014). In a January speech, President Obama called on Congress to work with his administration to

---

[5] *Available at* http://www.theguardian.com/world/2013/sep/10/nsa-violated-court-rules-data-documents.

[6] *Available at* http://www.nytimes.com/2013/08/22/us/2011-ruling-found-an-nsa-program-unconstitutional.html.

[7] *Available at* http://www.markudall.senate.gov/?p=press_release&id=3692.

craft statutory reforms. *See, e.g.*, Remarks by the President on Review of Signals Intelligence (Jan. 17, 2014).[8] And, since then, numerous reform bills have been introduced in both chambers of Congress. *See, e.g.*, USA FREEDOM Act, H.R. 3361, 113th Cong. (2013); USA FREEDOM Act, S. 1599, 113th Cong. (2013); Ending Secret Law Act, S. 1130, 113th Cong. (2013); FISA Court in the Sunshine Act, H.R. 2440, 113th Cong. (2013); Relevancy Act, H.R. 2603, 113th Cong. (2013).

More recently, the House of Representatives passed an omnibus surveillance bill, as well as other measures that address intelligence community surveillance practices. *See* Andrea Peterson, *NSA Reform Bill Passes House, Despite Loss of Support from Privacy Advocates*, Wash. Post (May 22, 2014);[9] Andrea Peterson & Ellen Nakashima, *House Votes to Rein in NSA 'Back Door' Surveillance Powers*, Wash. Post (Jun. 20, 2014).[10]

And, on July 29, the Chairman of the Senate Judiciary Committee, Sen. Patrick Leahy, accompanied by fifteen bipartisan co-sponsors, introduced a comprehensive surveillance reform bill in the Senate. *See* Leahy Introduces Historic Bill to Ban NSA's Dragnet Collection of Americans' Electronic Communications (Jul. 29, 2014).[11] According to news reports, in addition to bipartisan support, the bill has garnered "some support from the White House." Julian Hattem, *Senators Aim to Curb NSA Spying*, The

---

[8] *Available at* http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-president-review-signals-intelligence.

[9] *Available at* http://www.washingtonpost.com/blogs/the-switch/wp/2014/05/22/nsa-reform-bill-passes-house-despite-loss-of-support-from-privacy-advocates/.

[10] *Available at* http://www.washingtonpost.com/blogs/the-switch/wp/2014/06/20/house-votes-to-rein-in-nsa-back-door-surveillance-powers/.

[11] *Available at* http://www.leahy.senate.gov/press/leahy-introduces-historic-bill-to-ban-nsas-dragnet-collection-of-americans-electronic-communications.

Hill (Jul. 29, 2014).[12] A vote on the Senate bill is likely to occur soon, and according to observers, the bill represents the "best chance" for surveillance law changes this year. Siobhan Gorman, *Leahy Introduces Senate Bill to Rein in U.S. Surveillance*, Wall. St. J. (Jul. 29, 2014);[13] Hattem, *Senators Aim to Curb NSA Spying* ("[T]he bill is likely the best hope for reining in the spy agency this year.").

## II.    Plaintiff's FOIA Requests and Requests for Expedited Processing

Over the past year, EFF submitted four separate FOIA requests seeking public disclosure of still-secret significant or landmark opinions of the federal courts concerning national security surveillance. EFF requested expedited processing for each of the opinions, which the agency granted. Nevertheless, none of the requested opinions have been disclosed.

On August 23, 2013, EFF requested the expedited disclosure of two FISC opinions. *See* Declaration of David Sobel ("Sobel Declaration"), Exhibit 1 (the "Cardozo Request"). In the two requested opinions, the FISC assessed whether the government's collection activities had violated 50 U.S.C. § 1809(a), which makes it a federal crime "to engage[] in electronic surveillance under color of law except as authorized" by statute or to "disclose[] or use[]" any information obtained through unauthorized surveillance. *See id.* DOJ granted EFF's request for expedited processing on September 3, 2013. *See* Complaint, ¶ 21; Answer, ¶ 21 (ECF No. 5). As of the date of this filing, 235 business

---

[12] *Available at* http://thehill.com/policy/technology/213629-leahy-unveils-historic-nsa-reform-bill.

[13] *Available at* http://online.wsj.com/articles/leahy-introduces-senate-bill-to-rein-in-u-s-surveillance-1406666296.

days after submitting this request, DOJ has failed to render a determination, and the opinions remain secret.

On October 31, 2013, EFF requested the expedited disclosure of two FISC opinions and associated documents from 2007. *See* Sobel Declaration, Exhibit 2 (the "First Rumold Request"). The opinions assessed the government's authority to target international communications into or out of the United States without a particularized court order. *Id*. Although the existence of these opinions was publicly disclosed in 2007, EFF's request was prompted by government declassifications concerning its surveillance activities, which greatly increased the likelihood that portions of the opinions could be released. DOJ granted EFF's request for expedited processing on December 11, 2013. *See* Complaint, ¶ 22; Answer, ¶ 22. As of the date of this filing, 188 business days after submitting the request, DOJ has failed to render a determination, and the opinions remain secret.

On February 24, 2014, EFF requested the expedited disclosure of any still secret Foreign Intelligence Court of Review ("FISCR") decisions and any opinions or orders of the United States Supreme Court in any matter appealed from the FISCR. *See* Sobel Declaration, Exhibit 3 (the "Second Rumold Request"). DOJ granted EFF's request for expedited processing on April 3, 2014. *See* Complaint, ¶ 23; Answer, ¶ 23. As of the date of this filing, 112 business days after submitting the request, DOJ has failed to render a determination, and the opinions (if any exist) remain secret.

Finally, on March 14, 2014, EFF requested the expedited disclosure of three separate FISC opinions and releated documents. *See* Sobel Declaration, Exhibit 4 (the "Third Rumold Request"). The request stemmed from a report in the *New York Times*

that described three FISC opinions: a 2002 "Raw Take" opinion, a 2008 FISC opinion

concerning the FISA Amendments Act ("FAA"), and a 2007 "Large Content" order. *See*

*id*. According to the article, the intelligence community considers the "Raw Take" order

to be a landmark decision in shaping the rules governing intelligence community

conduct. *See* Charlie Savage and Laura Poitras, *How a Court Secretly Evolved, Extending*

*U.S. Spies' Reach*, N.Y. Times (Mar. 11, 2014).[14] And, the 2008 FISC opinion has been

described by executive officials as the "Rosetta Stone" for understanding the legal

underpinnings of the government's FAA surveillance. *Privacy and Civil Liberties*

*Oversight Board Public Hearing Regarding the Surveillance Program Operated*

*Pursuant to Section 702 of the Foreign Intelligence Surveillance Act* at 76, (Mar. 19,

2014) (statement of James Dempsey, Board Member, Privacy and Civil Liberties

Oversight Board).[15] DOJ granted EFF's request for expedited processing on April 10,

2014. *See* Complaint, ¶ 24; Answer, ¶ 24. As of the date of this filing, 98 business days

after submitting the request, DOJ has failed to render a determination, and the opinions

remain secret.

---

[14] *Available at* http://www.nytimes.com/2014/03/12/us/how-a-courts-secret-evolution-extended-spies-reach.html

[15]*Available at* http://www.pclob.gov/Documents/19%20March%202014%20PCLOB%20Public%20Hearing_Panel%20I%20Transcript.pdf

**III.    This Suit and EFF's Attempts to Establish a Schedule for the Prompt
Disclosure of these Opinions Without the Court's Involvement**

EFF initiated this suit on May 1, 2014. *See* Complaint (ECF No. 1). Shortly after

the government answered, EFF began negotiations with DOJ in a good faith attempt to

negotiate the release of these opinions without the Court's involvement.[16]

EFF proposed a staged production of responsive documents—one that would

guarantee the prompt processing and release of those opinions most critical to the public

for the current legislative debate, while affording the agency more time to review and

release other requested opinions. *See* Sobel Declaration, Exhibit 6. In turn, the agency

stated it required an additional ninety days—on top of the many months the agency has

already used—to process the records. *Id*.

Because the legislative debate on surveillance reform may well have passed in

ninety days, EFF now resorts to this Court to compel the government to expeditiously

produce the opinions responsive to EFF's request.

### ARGUMENT

The issue raised in this motion is straightforward. Although DOJ has

acknowledged EFF's legal entitlement to expedited processing, the agency has failed to

comply with FOIA's provisions governing the processing and release of records. DOJ

would have the legislative debate on NSA surveillance pass without providing public

access to these critical materials.

The agency's failure to process EFF's requests constitutes a continuing

impediment to EFF's (and the public's) ability to understand the legal basis for the

---

[16] Indeed, EFF began communications with DOJ concerning production of the opinions
requested in the Cardozo Request as early as September 2013. *See* Sobel Declaration,
Exhibit. 5.

intelligence community's surveillance programs, thus obstructing the public from meaningfully participating in the legislative debate on surveillance reform. The agency's action is unlawful and should therefore be enjoined.

## I.   The Court Has Jurisdiction to Grant the Requested Relief

The Court has jurisdiction to consider this matter and grant appropriate relief. The FOIA provides, in pertinent part:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B); *see Al-Fayed v. CIA*, 254 F.3d 300, 304-05 (D.C. Cir. 2001).

"[T]he FOIA imposes no limits on courts' equitable powers in enforcing its terms[.]" *Electronic Privacy Information Center v. Dep't of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) ("*EPIC I*") (internal citations omitted). Among those powers are the issuance of preliminary injunctions to compel agencies to process records in a timely fashion. *See, e.g., Id.* at 42;[17] *EFF v. ODNI*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008); *ACLU v. Dep't of Defense,* 339 F.Supp.2d 501, 503 (S.D.N.Y. 2004); *Aguilera v. FBI,* 941 F.Supp. 144, 152–53 (D.D.C. 1996); *Cleaver v. Kelley,* 427 F.Supp. 80, 81–82 (D.D.C. 1976). "[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts," relying on their equitable powers, "have a duty to prevent such abuses." *EPIC I*, 416 F. Supp. 2d at 35.

---

[17] The preliminary injunction that the court granted in this case was later modified to extend the government's deadline to process responsive documents. *See EPIC I*, slip op., No. 06-0096 (D.D.C. Mar. 24, 2006) (ECF No. 18). Nevertheless, the preliminary injunction remained in place and offered only limited extensions for some, but not all, production requirements.

Accordingly, the Court has jurisdiction to consider the motion and to grant the requested relief. As explained in more depth below, under the circumstances present here, a preliminary injunction is warranted.

**II.     EFF is Entitled to Entry of a Preliminary Injunction**

In considering EFF's request for the entry of a preliminary injunction, the Court must assess whether: (1) EFF "is likely to succeeed on the merits," (2) EFF "is likely to suffer irreparable harm in the absence of preliminary relief," (3) if "the balance of equities tips in [EFF's] favor," and (4) if "an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). Each of these factors counsels in favor of granting EFF the relief it seeks.

**A.     EFF Will Prevail on the Merits**

In assessing EFF's likelihood of success on the merits, the Court need only consider one issue:  whether DOJ has processed EFF's FOIA request in an expedited manner within the time frame provided in the FOIA and DOJ regulations. Here, EFF submitted a series of FOIA requests over the course of the past year, and although DOJ granted expedited processing for each request, the agency has not made determinations regarding any of these requests and DOJ has not released a single responsive document. EFF will prevail in demonstrating DOJ's non-compliance with FOIA's processing requirements.

FOIA requires an agency to complete two steps upon receiving a request for records. The first step requires the agency to "determine within 20 days (except Saturdays, Sundays, and legal public holidays) after the receipt of . . . [a] request whether to comply with such request" and to "immediately notify the person making such request of such determination[.]" 5 U.S.C. § 552(a) (6)(A)(i); *see also* 28 C.F.R. § 16.6(b). An

agency's initial "determination" must indicate "the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("*CREW*"). Once the agency has made its determination, FOIA's second step "requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *Id.* at 188.

"Expedited" processing imposes still more stringent requirements on the agency. Where a request is given expedited treatment, the statute requires the agency to process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); 28 C.F.R. § 16.5(d)(4). Although the statute does not establish a fixed timeframe for determinations and disclosure for expedited requests, "the phrase 'as soon as practicable,' in the context of a provision of FOIA allowing for *expedited* processing, cannot be interpreted to impose a lower burden on the agency than would otherwise exist." *EPIC I*, 416 F. Supp. 2d at 39 (emphasis in original). As such, an agency presumptively violates the "expedited processing" provisions of the FOIA when it fails to comply with the generally applicable 20-working-day deadline. *Id.*

Here, DOJ has not made a single determination regarding any of the requests at issue, in violation of its obligation to satisfy FOIA's first step. As described above, EFF submitted its requests in August 2013, October 2013, February 2014, and March 2014. *See supra* at 6-7. As of the date of this filing, 235 business days will have elapsed without a determination on the Cardozo Request; 188 business days for the First Rumold Request; 112 business days for the Second Rumold Request; and 98 business days for the

Third Rumold Request. *Id*. Plainly, the agency has violated FOIA's generally applicable 20-day statutory deadline for reaching a determination. *See CREW*, 711 F.3d at 189.

The agency compounds its violation by failing to produce any records responsive to EFF's request. As noted above, FOIA's requirement to make records "promptly available" means that agencies must make records available "within days or a few weeks of a 'determination,' not months or years." *Id*. at 188. Here, the agency has already taken "months" to reach its *determination*, let alone produce responsive records. Accordingly, EFF is likely to succeed on the merits of demonstrating the agency's failure to comply with FOIA's statutory processing requirements.

All this says nothing of the agency's failure to comply with its duty to process the requests expeditiously. Because the agency has failed to comply with the general time requirements applicable to FOIA requests, it has also necessarily failed to comply with the statute's expedited processing requirements. DOJ's prolonged and unexplained delay in reaching a determination and producing records is particularly egregious where, as here, the agency has recognized EFF's compelling need to obtain the requested records. *See supra* at 6-7 (discussing grant of expedited processing for each request).

Ultimately, there is no indication that DOJ has done anything more than pay lip service to EFF's entitlement to expedition. Indeed, and as described above, the only commitment EFF was able to obtain from the agency was—months after filing suit—to process the records within an additional 90 days. With a Senate vote on comprehensive surveillance reform rapidly approaching, an additional three month-delay would all but

negate the contribution that public access to the opinions would provide.[18]

**B.      EFF Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief**

Unless DOJ's ongoing violation of the law is immediately enjoined, EFF will suffer at least two irreparable injuries. First, the agency's ongoing delay erodes EFF's statutory rights under FOIA. Second, DOJ's extended delay obstructs EFF and the public from meaningfully and comprehensively participating in the ongoing legislative debate on surveillance reform. Either of these injuries, taken individually, justifies injunctive relief; taken together, they compel it. *Wash. Post v. DHS*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) (holding that, without a preliminary injunction, plaintiff would "lose out on its

---

[18]      This Court recently denied a motion for a preliminary injunction under circumstances that, at least superficially, bear resemblance to this case. *See EPIC v. Dep't of Justice*, 13-cv-01961-KBJ (D.D.C. Feb 2, 2014) (ECF No. 15) ("*EPIC II*"). Aside from superficial similarity, however, the facts of the two cases are wholly distinguishable. First, in *EPIC II*, only two months had elapsed between the submission of the request and the filing of the preliminary injunction motion; second, the *EPIC II* request, itself, was substantially broader, requiring review of a "volume of classified material," *see id.* at 14; third, the Court doubted the centrality of the requested records to the ongoing surveillance debate, *see id.* at 19; fourth, many of the records contained no segregable material, *see id.* at 21; and fifth, the prospect of Congressional action was far less imminent, *see id.* at 22.

In contrast, here: first, even EFF's most recent request has been outstanding for over four months, *see supra* at 7; second, the requests seek only specific court opinions, not a "volume" of agency files, *supra at 6-7*; third, the requests seek only significant opinions governing intelligence community conduct, documents for which there is little doubt of their importance, *see id*; fourth, in light of recent government declassifications, many (if not all) of the responsive opinions *must* contain segregable material; and, fifth, with the House having already passed surveillance legislation and the Senate due to act soon, Congressional action is, indeed, imminent here. *See supra* at 4-5.

As a final matter, EFF respectfully disagrees with the *EPIC II* Court's determination that the *only* consequence that attaches to an agency's failure to comport with the 20-day deadline is the availability of judicial review. *See id.* at 12. Such a construction finds no support in FOIA, nor does *CREW* compel such a construction. Rather, FOIA's 20-day determination deadline is a freestanding requirement that agencies are obligated to satisfy. *See* 5 U.S.C. § 552(a)(6)(A)(i) ("Each agency . . . *shall* determine within 20 days after receipt of any such request whether to comply with such request[.]") (emphasis added).

statutory right to expedited processing and on the time-sensitive public interests which underlay the request").

This Court regularly recognizes that the ongoing deprivation of a statutory right causes irreparable injuries for purposes of a preliminary injunction. *See, e.g.*, *Jasperson v. Federal Bureau of Prisons*, 460 F. Supp. 2d 76, 91 (D.D.C. 2006) (finding deprivation of a statutory right constitutes irreperable harm); *Bender v. Jordan*, 439 F. Supp. 2d 139, 176 (D.D.C. 2006) (finding irreparable harm through violation of shareholders' "statutory rights to receive accurate information"). Here, DOJ continues to deprive EFF of two statutory rights—its general right to a determination on its FOIA requests within 20 days and the right to expedited processing of those requests. This Court has recognized that the requisite injury is present in cases where FOIA processing is at issue and where time is of the essence, because delay—in violation of the statutory requirements—"constitutes a cognizable harm." *EPIC I*, 416 F. Supp. 2d at 40; *see also, United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988) (threat of irreparable harm exists where "time is of the essence"); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) (where "time is of the essence," delay "amounts to irreparable injury"). Under the statutory scheme Congress established in the FOIA, timing is critical and any further delay in the processing of EFF's request will constitute an ongoing deprivation of EFF's statutory rights. This is so for FOIA requests for which the general 20-day requirement applies; and timeliness is doubly critical when the requests, like those here, warrant expedited processing. Unless DOJ is ordered to process EFF's request immediately, what remains of EFF's statutory right to a timely determination and expedition will be reduced to nothing.

15

In addition to the loss of its clearly established statutory right, any further delay in the processing of EFF's FOIA requests will irreparably harm EFF's ability, and that of the public, to obtain in a timely fashion information vital to the current and ongoing debate surrounding national security surveillance. The public oversight mechanism provided by FOIA is central to open and democratic debate on critical policy issues such as the scope and legality of national security surveillance. The Act is "a means for citizens to know 'what their Government is up to,'" and the Supreme Court has cautioned that "[t]his phrase should not be dismissed as a convenient formalism. *It defines a structural necessity in a real democracy*." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (emphasis added; citation omitted). Additionally, if there is to be a meaningful public debate on this issue, the debate "cannot be based solely upon information that the Administration voluntarily chooses to disseminate." *EPIC I*, 416 F. Supp. 2d at 41 n.9. Accordingly, courts recognize that delay in the processing of agency records that bear on, or are likely to contribute to, time-sensitive matters of significant national debate irreparably injures the requester and the public. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 75 (holding delay constituted likelihood of irreparable harm for information needed for upcoming election); *EFF v. ODNI*, 07-cv-5278, 2007 WL 4208311, *7 (N.D. Cal. 2007) (finding "irreparable harm can exist in FOIA cases such as this because ongoing public and congressional debates about issues of vital national importance 'cannot be restarted or wound back.'") (citations omitted); *EPIC I*, 416 F. Supp. 2d at 40-41 (finding irreparable harm for delay in providing documents that would contribute to national debate on government surveillance program); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (recognizing the

urgency of the plaintiff's request given expiration of the provisions of the Voting Rights Act). Unwarranted delays in the processing and release of the requested documents will only further diminish the contributive value of the opinions to the ongoing and imminent legislative debate.[19]

Finally, as the D.C. Circuit has noted, "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). The "specter of information becoming stale and of little value" is particularly high under circumstances such as those present here—where Congress is about to take action and delay would "'deprive the public of its ability to make its views known'" on a "matter of current national debate." *Wash. Post.*, 459 F. Supp. 2d at 74-75 (citations omitted). Indeed, such a risk is not merely hypothetical: in a FOIA case bearing striking similarities to this one, EFF recently witnessed, first hand, the effect of delay on the value of information to a legislative debate. *See* Joint Status Report at 5-7 (describing production of responsive records, days after the value of those records was rendered moot by a legislative reauthorization), *filed in EFF v. Dep't of Justice*, 12-01441-ABJ (D.D.C. Jul. 1, 2013) (ECF No. 14).

Now, on the verge of the most significant overhaul of national security

---

[19] Analogously, courts have determined that the refusal to provide access to accurate and timely information in the corporate shareholder context constitutes irreparable injury. *See, e.g. Bender v. Jordan*, 439 F. Supp. 2d 139, 177 (D.D.C. 2006) (finding threat of irreparable injury based on the refusal to provide "accurate information, and to be free of deceptive information, bearing on their investment and voting decisions."); *Gen. Aircraft Corp. v. Lampert*, 556 F.2d 90, 97 (1977) ("[I]rreparable injury would occur to shareholders and the investing public if [defendants] were allowed to continue their activities without correcting and amplifying their Schedule 13D."); *Lichtenberg v. Besicorp Group*, 43 F. Supp. 2d 376, 390 (S.D.N.Y. 1999). Of course, here, we deal not with information bearing on shareholder votes, but information bearing directly on federal legislative action on a topic of national—if not international—importance.

surveillance statutes in nearly forty years, DOJ again seeks to inordinately delay its time to respond to EFF's FOIA requests. The information EFF seeks, if it is to contribute to the public debate on the propriety of intelligence community surveillance practices, must be disclosed expeditiously. Because time is of the essence in this matter, EFF and the public will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed*.*" *Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).

### C. Injunctive Relief Will Not Unduly Burden the Government or Other Interested Parties

The third factor in granting a preliminary injunction requires a court to "consider the effect on each party of the granting or withholding of the requested relief." *Winter v. NRDC, Inc.* 555, U.S. 7, 24 (2008) (citations omitted). The immediate relief Plaintiff seeks will require nothing more of the government than what the law already mandates— the expedited processing of EFF's FOIA request. DOJ cannot be "burdened" by a requirement that it comply with the law.

Nor will the requested relief burden the interests of other parties who have submitted FOIA requests to the DOJ in any manner beyond that foreseen by Congress. In providing for expedited processing of qualifying requests, Congress intended that such requests would take precedence over those that do not qualify for such treatment. Fulfillment of the legislative intent cannot be characterized as a burden on any party's interests.

Indeed, and to the contrary, fulfillment of EFF's request will actually serve to *lessen* the burden on other requesters. Charlie Savage, a reporter covering national

18

security surveillance for the *New York Times*, has requested—and filed suit to obtain—

many of the same opinions sought by EFF in this case. *See N.Y. Times v. Dep't of Justice*,

No. 14-3948 (S.D.N.Y. filed June 3, 2014). Through the processing and release of

opinions responsive to EFF's requests, the government has the opportunity to quickly

resolve at least two (if not many more) of its most urgent, outstanding FOIA requests.

### D.     The Public Interest Overwhelmingly Favors the Requested Relief

The final criterion for the issuance of a preliminary injunction is also satisfied in

this case. The public interest favors the requested relief—both in order to promote public

understanding and participation in the surveillance reform process and to ensure agencies

comply with their statutory responsibilities.

The D.C. Circuit has long recognized that "there is an overriding public interest

. . . in the general importance of an agency's faithful adherence to its statutory mandate."

*Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *EPIC I*, 416 F. Supp.

2d at 42. Likewise, it is "axiomatic that an 'agency is required to follow its own

regulations.'" *Edmonds v. FBI*, No. 02-1294, 2002 WL 32539613, at *3 n.3 (D.D.C. Dec.

3, 2002) (quoting *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir.

1997)). Such adherence is all that EFF seeks here—adherence that is squarely in the

public interest.

The public interest will also be served by the expedited release of the requested

records, which will further the FOIA's core purpose of "shed[ding] light on an agency's

performance of its statutory duties." *Dep't of Justice v. Reporters Committee for Freedom

of the Press*, 489 U.S. 749, 773 (1989). EFF's requests are narrowly targeted to uncover

only the most significant and still-secret opinions governing intelligence community

surveillance. A member of the Privacy and Civil Liberties Oversight Board described one

opinion sought here as the "Rosetta Stone" for understanding the legal underpinnings of the government's FAA surveillance. *Privacy and Civil Liberties Oversight Board Public Hearing Regarding the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act* (Mar. 19, 2014) (statement of James Dempsey, Board Member, Privacy and Civil Liberties Oversight Board).[20] Another opinion was listed in a series of surveillance rules milestones—one of only three FISC opinions on the list. *See* Charlie Savage, *NSA Timeline of Surveillance Law Developments*, N.Y. Times (Mar. 11, 2014).[21] In short, these requests are not a burdensome fishing expedition, seeking to rummage through government files in the hope of turning up incriminating or important documents. Rather, they are carefully calibrated and narrowly targeted to advance the public's understanding and to enable the public to meaningfully participate in the debate on surveillance law reform.[22] As such, "the public interest is particularly well-served by the timely release of the requested documents." *EPIC I*, 416 F. Supp. 2d at 42.

### III.    The Court Should Order DOJ to Process EFF's FOIA Request Immediately

EFF recognizes that preliminary injunctions are not the norm in FOIA cases and that it must satisfy a high standard to obtain the injunctive relief it seeks here. It is uncontested that the records at issue here warrant expedited processing and release; it is

---

[20] *Available at* http://www.pclob.gov/Documents/19%20March%202014%20PCLOB%20 Public%20Hearing_Panel%20I%20Transcript.pdf

[21] *Available at* http://www.nytimes.com/interactive/2014/03/12/us/nsa-timeline.html?_r=0

[22] Further evidence of the carefully tailored nature of EFF's requests and suit, in September 2013, EFF submitted another, far broader FOIA request to DOJ NSD. *See* Sobel Decl., Exhibit. 6. However, in order to expedite these proceedings, EFF intentionally omitted that request from this suit to better focus and narrow the government's production efforts. *See generally* Complaint ¶¶ 15-18.

uncontested that DOJ has failed to reach determinations on any of the requests; and EFF

has availed itself of every method of encouraging the government to release the

documents in a timely manner. Under these circumstances, the appropriate form of relief

is clear: the Court should order the government to reach a determination on disclosure,

followed shortly thereafter by disclosure of the requested records. *EPIC I*, 416 F. Supp. at

35 n.4 ("[T]he court may use its equitable power to prevent agency delay, even when

exercise of such authority is preliminary in nature.").

This Court and others have imposed specific processing deadlines on agencies,

requiring the prompt delivery of non-exempt records to FOIA requesters, pursuant to

preliminary injunctions. *See, e.g.*, *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 505

(S.D.N.Y. 2004) (granting preliminary injunction motion in FOIA case and requiring

production within one month); *Aguilera v. FBI*, 941 F. Supp. 144, 153 (D.D.C. 1996)

(granting preliminary injunction in FOIA case and requiring expedited processing to be

completed within approximately one month); *Cleaver v. Kelley*, 427 F. Supp. 80, 82

(D.D.C. 1976) (granting preliminary injunction in FOIA case and requiring expedited

processing to be completed within approximately twenty days).

Indeed, even in cases that do not involve expedited processing, this Court has

ordered agencies to undertake expeditious and resource-intensive review processes

involving large numbers of documents. In *Judicial Watch, Inc. v. Dep't of Energy*, 191 F.

Supp. 2d 138 (D.D.C. 2002), a case that did not involve expedited processing, the court

ordered the Commerce Department and the Transportation Department to process,

respectively, 9000 and 6000 pages of material; to complete the processing within 60

days; and to provide the requester with a *Vaughn* index within 72 days. *Id*. at 141.

Similarly, in *NRDC*, the court ordered the Energy Department to process 7500 pages of material; to complete the processing of the "vast majority" of the material within 32 days; to complete all processing within 48 days; and to provide the requester with a *Vaughn* index within 63 days. *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 43-44 (D.D.C. 2002). Again, the FOIA request in *NRDC*, unlike the requests at issue here, had not been granted expedited treatment.

Here, the records EFF seeks are limited in nature, require only the most basic search, and are likely to contain significant amounts of non-exempt information. The agency has provided no reason to justify its delay to this point, and no valid justification exists for its continued failure to immediately process and release the requested records.

Recognizing the extraordinary public interest in the records at issue here, and in order to facilitate the informed participation of EFF, and the public, in the current and ongoing debate over national security surveillance, the Court should direct DOJ to immediately reach a determination on production for each of Plaintiff's requests, and produce or identify all responsive records, within 10 days of the issuance of the order EFF seeks.[23]

---

[23] Judicial resolution of the expedited processing issue does not resolve all issues raised in the complaint. Once the question of processing is resolved, the Court retains jurisdiction to review the completeness and propriety of DOJ's substantive withholding decisions. *See* 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted. Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion as soon as practicable.

Respectfully submitted,

__*/s/ David L. Sobel*_____

DAVID L. SOBEL
D.C. Bar No. 360418

ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W.
Suite 410
Washington, DC 20036
(202) 246-6180

Counsel for Plaintiff