# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
ELECTRONIC FRONTIER                     )
FOUNDATION,                             )
                                  )
      Plaintiff,                        )
                                    )
        v.                            )       Civil Action No. 14-760-RMC
                                    )
DEPARTMENT OF JUSTICE,                  )
                                   )
      Defendant.                        )
                                   )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
## DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

JACQUELINE COLEMAN SNEAD (D.C. Bar
459548)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-3418
Fax:  (202) 616-8470
E-mail: Jacqueline.Snead@usdoj.gov

**Counsel for the Department of Justice**

**INTRODUCTION**

Plaintiff Electronic Frontier Foundation ("Plaintiff" or "EFF") submitted several Freedom of Information Act ("FOIA") requests to the National Security Division ("NSD") of the Department of Justice seeking opinions of the Foreign Intelligence Surveillance Court ("FISC") and government submissions related thereto.  Although the Department has provided Plaintiff with the segregable, responsive information from the requested FISC records, Plaintiff still contends that the Department's limited withholdings from nine of those records and the withholding in full of one record violate FOIA.  As demonstrated by the declarations submitted herewith, that contention is without merit.

The one document that the Department has withheld in full corresponds to a citation redacted from a footnote in the October 3, 2011 FISC opinion whose withholding was upheld pursuant to exemption (b)(1) in *Electronic Frontier Found. v. Department of Justice*, No. 12-1441 (ABJ), 2014 WL 3542124 (D.D.C. July 18, 2014) (hereinafter "*EFF v. DOJ*, No. 12-1441").  Now, in circumvention of that ruling, Plaintiff seeks to compel the production of the cited document, which clearly would disclose information that a court already has held the Department need not disclose under FOIA.  Accordingly, this Court should hold that Plaintiff is precluded from seeking that information here or alternatively uphold the Department's withholding of that document in full pursuant to exemptions (b)(1) and (b)(3).

The Court also should uphold the limited withholdings challenged in the other nine documents that the Department produced in part.  Because Plaintiff narrowed its challenges here to exclude (1) docket numbers, certification numbers and the like, (2) all withholdings pursuant to exemption (b)(6), and (3) names or descriptions of surveillance

targets, all that remains in dispute are withholdings of classified intelligence sources and

methods and law-enforcement procedures and methods that are exempt under (b)(1),

(b)(3), and (b)(7).  Their disclosure could result in exceptionally grave or serious damage

to the national security, or reasonably be expected to interfere with law enforcement

investigations or disclose law enforcement techniques.  The Court should defer to the

government's determinations of the harm that would attend such disclosure, uphold the

Department's withholdings, and grant this motion.

## STATEMENT OF FACTS

This action originally challenged four separate FOIA requests submitted to NSD

seeking various opinions of and submissions to the FISC.  NSD processed the requests in

accordance with the rolling schedule the Department proposed, and this Court adopted.

*See* Minute Order, Sept. 5, 2014.[1]

**August 23, 2012 FOIA Request**

By letter dated August 23, 2012, Plaintiff submitted a FOIA request to NSD

seeking two documents referenced in a footnote of the October 3, 2011 FISC opinion that

was at issue in the FOIA action *EFF v. DOJ*, No. 12-1441.  *See* Compl. for Inj. Relief

("Compl.") ¶ 10, May 1, 2014, ECF No. 1.  Specifically, EFF requested the "'separate

order' . . . described in footnote 15 of the October 3 Opinion . . . in which the [FISC]

'address[ed] Section 1809(a) and related issues" and the "case, order, or opinion whose

citation was redacted in footnote 15 of [that] . . . Opinion and described as 'concluding

that Section 1809(a)(2) precluded the Court from approving the government's proposed

---

[1] The government twice moved for an enlargement of time: once to extend the December 8, 2015 deadline
by a few days and once to extend the deadline for completion of the processing of the March 14, 2014
FOIA request from March 2 until March 6, 2015.  *See* Consent Mot. for Extension of Time to Provide
Interim, Partial FOIA Response, Dec. 5, 2014, ECF No. 12; Mot. for Extension of Time to Complete FOIA
Processing, Mar. 4, 2015, ECF No. 13.  Both motions were granted.

use of, among other things, certain data acquired by NSA without statutory authority through its "upstream collection."''" Declaration of Susan Kim ("Kim Decl.") Ex. A, attached hereto. By email dated August 27, 2013, NSD acknowledged receipt of that request, and in an email dated September 3, 2013, NSD granted EFF's request for expedited processing. *See* Kim Decl. Ex. B.

On September 3, 2014, NSD produced in redacted form the FISC opinion responsive to item 1 of EFF's request seeking the FISC order that addressed "Section 1809(a) and related issues." *See* Kim Decl. Ex. C. That letter also advised that NSD was withholding in full the FISC record whose citation was redacted from footnote 15 of the October 3, 2011 FISC opinion, the withholding of which Judge Berman Jackson upheld pursuant to FOIA exemption (b)(1) in *EFF v. DOJ*, No. 12-1441. Nevertheless, by email dated March 24, 2015, EFF advised that it was challenging the withholding of the record corresponding to that redacted information. *See* Kim Decl. Ex. S.

**October 31, 2013 FOIA Request**

By letter dated October 31, 2013, EFF requested the FISC order of January 10, 2007 as well as any subsequent FISC order "reconsidering, reinterpreting, refusing to renew, or otherwise altering" the earlier order. *See* Kim Decl. Ex. E. NSD acknowledged receipt of that request by letter dated November 29, 2013 and subsequently granted expedited processing by letter dated December 11, 2013. *See* Kim Decl. Exs. F & G. Over two transmissions dated December 12, 2014 and January 26, 2015, NSD produced six partially redacted documents responsive to EFF's October 31, 2013 request. *See* Kim Decl. Exs. H & I. NSD withheld information pursuant to FOIA exemptions (b)(1), (b)(3), (b)(6), and (b)(7).

By email dated March 24, 2015, EFF advised that it was challenging the withholdings from four of the six documents produced in response to the October 31, 2013 request except to the extent the withholdings are docket numbers, certification numbers and quantities, quantities of applications, names of surveillance targets or their descriptions.  The four challenged documents are the January 10, 2007 FISC Order, the January 10, 2007 FISC Order (Foreign Order), the April 3, 2007 FISC Order and Memorandum Opinion, and the April 4, 2007 FISC Order.

**February 24, 2014 FOIA Request**

By letter dated February 24, 2014, EFF requested from NSD "All written decisions, opinions, or orders issued by the Foreign Intelligence Surveillance Court of Review ('FISCR')" and "All written decisions, opinions, or orders issued by the Supreme Court in any case or matter appealed from the FISCR."  *See* Kim Decl. Ex. J.  NSD acknowledged receipt of the request by email dated February 26, 2014 and granted expedited processing by letter dated April 3, 2014.  *See* Kim Decl. Exs. K & L.

By letter dated September 5, 2014, NSD produced two publicly available and partially redacted documents in response to the first part of the request:  *In re Sealed Case*, FISCR Dkt. No. 02-001, 310 F.3d 717 (FISCR 2002) and *In re Directives*, FISCR Dkt. No. 08-01, 551 F.3d 1004 (FISCR 2008).  *See* Kim Decl. Ex. M.  The letter also advised that the FISC then-recently had ordered a classification of review of *In re Directives* and that the unclassified version submitted in response to that order was under

seal and could not be made publicly available until further order from that court.[2]  No

documents responsive to part two of the request were located.

By email dated March 24, 2015, EFF advised that it was not challenging any

aspect of NSD's response to the February 24, 2014 FOIA request.  *See* Kim Decl. Ex. S.

**March 14, 2014 FOIA Request**

By letter dated March 14, 2014, EFF requested the following records from NSD:

1.  The "Raw Take" order (Dkt No. 02-431), dated July 22, 2002 and captioned
    "In Re Electronic Surveillance and Physical Search of International Terrorist
    Groups, Their Agents, and Related Targets;" and

2.  The "Large Content FISA" order(s) and/or opinion(s); and

3.  The September 4, 2008 FISC order(s) and/or opinion(s) concerning the FISA
    Amendments Act; and

4.  All documents, including legal memoranda, declarations, briefs, or any other
    document submitted by the government in support of items (1) – (3) above;
    and

5.  All documents, including legal memoranda, declarations, briefs, or any other
    document incorporated, adopted within, or issued with items (1) – (3) above.

*See* Kim Decl. Ex. N.  NSD acknowledged receipt of that request by letter dated March

27, 2014 and subsequently granted expedited processing by letter dated April 10, 2014.

*See* Kim Decl. Exs. O & P.

By letters dated December 12, 2014, March 2, 2015, and March 6, 2015, NSD

produced thirteen documents responsive to the March 14, 2014 request.  *See* Kim Decl.

Exs. H, Q, & R.  NSD withheld information pursuant to FOIA exemptions (b)(1), (b)(3),

(b)(6), and (b)(7).

---

[2]  By email dated September 15, 2014, undersigned counsel advised EFF that the FISCR had lifted the seal
on the unclassified version of *In re Directives* and that the document was publicly available on
www.icontherecord.tumblr.com.

By emails dated March 24, 2015 and March 27, 2015, EFF advised that it was challenging the withholdings from five of the thirteen documents except to the extent the information was docket numbers, certification numbers and quantities, quantities of applications, withholdings pursuant to (b)(6), or names or descriptions of surveillance targets.

The Department now moves for summary judgment and an order upholding the withholding in full of the document responsive to item 2 of EFF's August 23, 2012 FOIA request (hereinafter "Document 1")[3] and the withholding in part of the following nine documents: (1) September 4, 2008 FISC Opinion (hereinafter "Document 2a");[4] (2) Notice of Clarification and Correction (hereinafter "Document 2c");[5] (3) Government's Preliminary Response to Certain Questions Posed by the Court (hereinafter "Document 2d");[6] (4) Memorandum of Law in Support of Application for Authority to Conduct Electronic Surveillance (Dec. 13, 2006) (hereinafter "Document 3a");[7]  (5) Supplemental

---

[3]   The document numbers used herein correspond to the numbering of the list of challenges Plaintiff provided to undersigned counsel by email dated March 24, 2015.  *See* Kim Decl. Ex. S.

[4]   The withholdings on the following pages of Document 2a fall into one of the categories of information that EFF advised the Department it was not challenging: p. 1; p. 5, ln. 1; p. 13, fn. 11; p. 18, fn. 14, after "Certifications"; p. 23; p. 28, fn. 30 after "Docket No."; p. 29; p. 32, fn. 35; and p. 42.  *See* Kim Decl. ¶ 13 n.4.

[5]   The withholdings on the following pages of Document 2c fall into one of the categories of information that EFF advised the Department it was not challenging: p. 1, caption; and p. 7 (NSD official name).  *See* Kim Decl. ¶ 13 n.5.

[6]   The withholdings on the following pages of Document 2d fall into one of the categories of information that EFF advised the Department it was not challenging: p. 1 (NSD official name); p. 2, first bullet; p. 6, lns. 1-2; and p. 9.  *See* Kim Decl. ¶ 13 n.6.

[7]   The withholdings on the following pages of Document 3a fall into one of the categories of information that EFF advised the Department it was not challenging: cover page; p. 1, except the last three lns.; p. 2; p. 3, fn. 3; p. 4; p. 5, lns. 13-14; pp. 6-10; p. 11, middle header; p. 11, lns. 1 & 5 after header; p. 12, lns. 2 & 4; p. 12, penultimate ln.; p. 13, ln. 5, after "approved in"; p. 13, ln. 6; pp. 14-23; p. 26, lns. 14-15; p. 27, para. 2, lns. 3 & 4; p. 27, para. 2, lns. 9 & 11; p. 31, lns. 1, 7-8, & 12; p. 34; p. 37, lns. 7-8 & 13; p. 37, fn. 19; p. 38, lns. 1-3; p. 40; p. 45, ln. 4; p. 47, last para., lns. 2-3; p. 48, ln. 3; p. 49, last bullet; p. 50, all bullets; p.

Memorandum of Law and Declaration in Support of Application for Authority to

Conduct Electronic Surveillance (Jan. 2, 2007) (hereinafter "Document 3b");[8] (6) FISC

Order (Jan. 10, 2007) (hereinafter "Document 3c");[9] (7) FISC Order (Foreign Order)

(Jan. 10, 2007) (hereinafter "Document 3d");[10] (8) FISC Order and Memorandum

Opinion (Apr. 3, 2007) (hereinafter "Document 3e"); [11] and (9) FISC Order (Apr. 5,

2007) (hereinafter "Document 3f")[12].[13]

---

51; p. 52; p. 55, fn. 32; pp. 58-59; pp. 62-63; pp. 66-70; p. 71, lns. 1-2 & 20-21; p. 72; p. 74; and p. 76 (counsel name).  *See* Kim Decl. ¶ 13 n.7.

[8]  The withholdings on the following pages of the Supplemental Memorandum of Law of Document 3b fall into one of the categories of information that EFF advised the Department it was not challenging: cover page; p. 1, lns. 5-7; p. 2, text lns. 6-8; p. 2 last bullet; p. 3, ln. 1; p. 3 (declarant name); p. 5, ln. 2; p. 12, after "Most notably, in"; p. 12, lns. 7-8; p. 12, last two lns.; p. 21, para. 2, ln. 5; p. 25, last para.; and p. 28 (counsel name).  *See* Kim Decl. ¶ 13 n.8.

The withholdings on the following pages of the Declaration of the NSA Official of Document 3b fall into one of the categories of information that EFF advised the Department it was not challenging: p. 1; p. 2, lns. 2-4; p. 2, last two lns.; p. 2, fn. 1; pp. 3-4; p. 7, ¶¶ 10-11; p. 7, ¶12, lns. 3-4; pp. 7-8, ¶ 12; p. 8, ¶ 13, lns. 2-6; p. 8, ¶ 14, lns. 2-3; p. 10, ¶ 17; p. 16, ¶ 28, ln. 5; and p. 19 (declarant name).  *See* Kim Decl. ¶ 13 n.8.

[9]  The withholdings on the following pages of Document 3c fall into one of the categories of information that EFF advised the Department it was not challenging: pp. 1-6; p. 10; and p. 13.  *See* Kim Decl. ¶ 13 n.9.

[10]  The withholdings on the following pages of Document 3d fall into one of the categories of information that EFF advised the Department it was not challenging: pp. 1-4; p. 5, fn. 2; p. 8, fn. 6, lns. 2 & 3; p. 8, fn. 6, ln. 4 before "but also"; p. 12;  p. 13, lns. 6-7; p. 14; p. 15; and p. 19.  *See* Kim Decl. ¶ 13 n.10.

[11]  The withholdings on the following pages of Document 3e fall into one of the categories of information that EFF advised the Department it was not challenging: p. 1; p. 2, lns. 2, 6-7, 16, 17, 22, 24 & 25; p. 2, ln. 26, after "Docket No."; p. 2., fn. 2, lns. 1-3; p. 2, fn. 2, ln. 4 after "Docket No."; p. 3, lns. 1, 6, 8, & 9; p. 3, ln. 10, after "Docket No."; p. 3, fn. 2; p. 3, fn. 3, ln. 1; p. 3, fn. 3, ln. 2 after "Docket No."; p. 3, fn. 3, lns. 6-7; p. 3, fn. 4; p. 4, para. 2, lns. 4-5; p. 4, para. 2, ln. 10; p. 6, ln. 1; p. 7, fn. 10, lns. 2-3; p. 8, fn. 12, para. 1, lns. 2 & 4; p. 8, fn. 12, para. 2; p. 9, fn. 13, ln. 1 after "Docket No."; p. 10 after "Docket No"; p. 10, fn. 16, ln. 3; p. 12, fn. 20; p. 13, ln. 2 after "Docket No."; p. 16, ln. 3; p. 17; p. 19, ln. 2; p. 19, para. 2; p. 19, fn. 41, ln. 3; p. 20 after "Docket No."; p. 21. after "Docket No."; and p. 22.  *See* Kim Decl. ¶ 13 n.11.

[12]  The withholdings on the following pages of Document 3f fall into one of the categories of information that EFF advised the Department it was not challenging: pp. 1-5; p. 8, fn. 5, lns. 2 & 3; p. 8, fn. 5, ln. 4 before "but also"; p. 11, last ln.; p. 12; p. 14; p. 15, ln. 1; and p. 18.  *See* Kim Decl. ¶ 13 n. 12.

[13] The redacted portions of Document 2c and Document 2d are also currently under seal.  *See Senate of Commonwealth of P.R. v. United States Dep't of Justice*, No. 84-1829 (CRR), 1993 WL 364696, at *6 (D.D.C. Aug. 24, 1993) ("The Supreme Court has held that records covered by an injunction, protective order, or held under court seal are not subject to disclosure under FOIA." (internal citation omitted)).

**ARGUMENT**

FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  While FOIA generally requires agency disclosure, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b).  Although these exemptions should be "narrowly construed," (*Abramson*, 456 U.S. at 630), they should be given "meaningful reach and application," (*John Doe*, 493 U.S. at 152).  The Act "confers jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *see also* 5 U.S.C. § 552(a)(4)(B).

An agency is entitled to summary judgment when, as here, "the agency demonstrates that it has fully discharged its obligations under FOIA." *Wilbur v. CIA*, 273 F. Supp. 2d 119, 124 (D.D.C. 2003).  "In determining whether the agency has satisfied this burden, the Court may rely solely on agency affidavits," (*Grove v. Department of Justice*, 802 F. Supp. 506, 509 (D.D.C. 1992) (internal citations omitted)), and should award summary judgment "solely on the basis of information provided by the agency in declarations," (*Darui v. United States Dep't of State*, 798 F. Supp. 2d 32, 37 (D.D.C. 2011)).  Such declarations should "describe 'the [responsive] documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Mack v. Department of Navy*, 259 F. Supp. 2d. 99, 104 (D.D.C. 2003); *see also Wheeler v. CIA*, 271 F. Supp. 2d 132, 136 (D.D.C. 2003).

Unless the declarations are "deficient, the court need not conduct further inquiry into their veracity." *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001). Rather, they "enjoy a presumption of good faith, which may not be rebutted by purely speculative claims." *Mack*, 259 F. Supp. 2d. at 105 (internal quotations omitted). That is especially true in cases implicating, as here, national security concerns. *See Shapiro v. United States Dep't of Justice*, 37 F. Supp. 3d 7, 24 (D.D.C. 2014) (noting that "the D.C. Circuit has underscored the deferential nature of judicial review in FOIA cases involving matters of national security"). Courts in such cases "have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Center for Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003); *ACLU v. United States Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (noting that courts "must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record" because they "'lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case'"); *see also Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007); *Krikorian v. Department of State*, 984 F.2d 461, 464 (D.C. Cir. 1993). Affording such deference to the declarations filed herewith, the Court should uphold the government's withholdings in this case and enter judgment in favor of the Department. *See generally* Declaration of David J. Sherman

9

("Sherman Decl."), attached hereto; Declaration of David M. Hardy ("Hardy Decl."),

attached hereto.

## I.   PLAINTIFF SHOULD BE ESTOPPED FROM SEEKING INFORMATION THAT IT UNSUCCESSFULLY SOUGHT IN PRIOR FOIA ACTIONS AGAINST THE DEPARTMENT.

Plaintiff here seeks information that in prior actions against the Department, the

court held Plaintiff was not entitled to under FOIA.  The doctrine of collateral estoppel

thus precludes Plaintiff's apparent effort to relitigate its entitlement under FOIA to this

same information.  *See National Treas. Emps. Union v. IRS*, 765 F.2d 1174, 1177 (D.C.

Cir. 1985) (noting that "[c]ourts today are having difficulty giving a litigant one day in

court" so "[t]o allow that litigant a second day is a luxury that cannot be afforded"

(internal quotations omitted)).  "Collateral estoppel requires three elements, each of

which is present here: '[1], the same issue now being raised must have been contested by

the parties and submitted for judicial determination in the prior case[; 2], the issue must

have been actually and necessarily determined by a court of competent jurisdiction in that

prior case[; and] [3], preclusion in the second case must not work a basic unfairness to

the party bound by the first determination.'"  *Martin v. Department of Justice*, 488 F.3d

446, 454 (D.C. Cir. 2007).

In satisfaction of the first element, the parties now before the Court previously

litigated whether Plaintiff was entitled under FOIA to identification of the FISC opinion

redacted from footnote 15 of the October 2011 FISC opinion and the identities of the

telecommunications service providers ordered to assist the government in its foreign

intelligence collection.  The government justified withholding that information pursuant

to exemption (b)(1) because the information was properly classified and its disclosure

reasonably could be expected to damage national security as well as pursuant to

exemption (b)(3). *See, e.g.,* Decl. of Jennifer L. Hudson, Dir., Info. Mgmt. Div., Office of the Chief Info. Officer, Office of the Dir. of Nat'l Intelligence ¶¶ 30, 46 in *EFF v. DOJ*, No. 12-1441, Sept. 4, 2013, ECF No. 16-2 (justifying withholding of the information redacted from "n.15" of the October 2011 FISC Opinion as "properly classified" and within the ambit of the National Security Act's prohibition on disclosure); Decl. of Jennifer L. Hudson, Dir., Info. Mgmt. Div., Office of the Chief Info. Officer, Office of the Dir. of Nat'l Intelligence ¶¶ 58, 61 in *Electronic Frontier Found. v. Department of Justice*, Civ. Action No. 11-5221 ("*EFF v. DOJ*, No. 11-5221"), Mar. 28, 2014, ECF No. 77-1 (explaining that the "identity of any service provider(s) subject to this or any Primary Order [of the FISC] falls within Section 1.4(c), 1.4(d), and 1.4(g) of E.O. 13625" and "is also protected from release by statute").  Plaintiff, in both cases, as here, contended that it was entitled to this information. *See* Mem. in Opp'n to Def.'s Mot. for Summ. J. & in Support of Pl.'s Cross-Mot. for Summ. J. at 16, *EFF v. DOJ*, No. 12-1441, Oct. 2, 2013, ECF No. 18 (contending that the Department's redactions of "docket information for FISC opinions," including from footnote 15 of the October 2011 FISC opinion, "are improper" and "not properly exempt from disclosure"); Notice of Mot. & Cross-Mot. for Summ. J & Opp'n to Def.'s Mot. for Summ. J. at 20-23, *EFF v. DOJ*, No. 11-5221, Apr. 18, 2014, ECF No. 79 (contending that the "government cannot continue to withhold the names of telecommunication providers participating in the NSA's call record collection program").

The second element of collateral estoppel is met because the district court in *EFF v. DOJ*, No. 12-1441, and *EFF v. DOJ*, No. 11-5221, decided that Plaintiff was not entitled under FOIA to the identification, respectively, of either the opinion redacted from

footnote 15 of the October 2011 FISC opinion or telecommunications service providers that participate in the government's foreign intelligence collection programs.  *See EFF v. DOJ*, No. 12-1441, 2014 WL 3542124, at *6 (upholding the redactions of "the docket number information contained throughout the opinion");[14] *EFF v. DOJ*, No. 11-5221, 2014 WL 3945646, at *5 (N.D. Cal. Aug. 11, 2014) (upholding the Department's withholding of "which telecommunications companies assisted with NSA intelligence activities").  Plaintiff did not appeal either adverse determination.  *See Martin*, 488 F.3d at 455 ("It is well established that a lower court judgment may have preclusive effect despite the lack of appellate review.").

Finally, giving preclusive effect to the determinations in *EFF v. DOJ*, Case No. 12-1441, and *EFF v. DOJ*, Case No. 11-5221, does not "work a[ny] basic unfairness" to Plaintiff.  *See Martin*, 488 F.3d at 455 (finding circumstances insufficient to exempt a plaintiff from the rules of preclusion where the "incentives to litigate the point now disputed were no less present in the prior case," and there is no "risk that the 'prior proceedings were seriously defective'").  Because the required elements of collateral estoppel are present, Plaintiff should be precluded from challenging the Department's withholding of the identities of telecommunications service providers[15] and the FISC opinion whose identity was redacted from footnote 15 of the October 2011 FISC opinion.

---

[14]  Judge Jackson upheld the withholding under exemption (b)(1) and therefore did not address the applicability of (b)(3).

[15]  Information within this category was withheld from:
Document 3a:  p. 32, p. 36
Document 3b (Supp. Mem.):  p. 18
Document 3c:  pp. 8-9
Document 3d:  pp. 6-7, pp. 10-11
Document 3e:  p. 4
Document 3f:  pp. 6-7, pp. 10-11
*See* Sherman Decl. ¶ 37.

## II.     THE COURT SHOULD UPHOLD THE CHALLENGED WITHHOLDINGS UNDER EXEMPTION (B)(1).

All of the challenged withholdings are exempt from disclosure under exemption (b)(1).  The Department has invoked exemption (b)(1) to protect information properly classified pursuant to Executive Order 13526.  This exemption protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to such Executive order."  *See* 5 U.S.C. § 552(b)(1).  Exemption (b)(1) thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981).  An agency can demonstrate that it has properly withheld information under exemption (b)(1) if it establishes that it has met the requirements of the applicable Executive Order.  Substantively, the agency must show that the information at issue logically falls within the exemption, i.e., the Executive Order authorizes the classification of the information at issue.  Procedurally, the agency must demonstrate that it followed the proper procedures in classifying the information.  *See Salisbury v. United States*, 690 F.2d 966, 970-73 (D.C. Cir. 1982); *Military Audit Project*, 656 F.2d at 737-38.  An agency that demonstrates substantive and procedural compliance with an applicable Executive Order is entitled to summary judgment.  *See Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606-08 (D.C. Cir. 1985).  Here that order is Executive Order No. 13526, "Classified National Security Information."  Under Section 1.1(a) of that order, information may be classified if:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

75 Fed. Reg. 707, 707 (Dec. 29, 2009) ("Executive Order No. 13526").  As demonstrated by the Sherman Declaration and the Hardy Declaration, these conditions are met by the information the government continues to withhold from the nine partially redacted documents still at issue and the one document withheld in full.  *See Judicial Watch v. United States Dep't of Def.*, 715 F.3d 937, 940 (D.C. Cir. 2013) ("Agencies may establish the applicability of Exemption 1 by affidavit (or declaration).").

A.      **An Original Classification Authority Has Properly Classified the Information Withheld From the October 2011 FISC Opinion as Exempt Under (b)(1).**

Dr. Sherman and Mr. Hardy have original classification authority and have determined that the challenged information withheld here pursuant to (b)(1) is properly classified.  Section 1.3(a) of Executive Order 13526 provides that the authority to classify information "may be exercised . . . [by] United States Government officials delegated this authority pursuant to [Section 1.3(c)]."  75 Fed. Reg. at 708.  Section 1.3(c)(2) provides that "'Top Secret' original classification authority may be delegated only by the President, the Vice President, or an agency head or official designated pursuant to [Section 1.3(a)(2)]."  75 Fed. Reg. at 708.  *See* Sherman Decl. ¶ 2 ("I am a TOP SECRET original classification authority ('OCA') pursuant to Section 1.3 of Executive Order ('E.O.') 13526, dated 29 December 2009 (75 Fed. Reg. 707)."); Hardy Decl. ¶ 2 ("I have

14

been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3 and 3.1.").

As to all (b)(1) withholdings challenged by Plaintiff, Mr. Hardy and Dr. Sherman have examined the underlying information and determined that it is currently and properly classified under Executive Order 13526.  *See* Sherman Decl. ¶ 15 ("In my role as a TOP SECRET OCA, I have reviewed the categories of information withheld pursuant to these FOIA requests and determined that those categories are information currently and properly classified in accordance with E.O. 13526."); Hardy Decl. ¶ 21 ("I have determined the information withheld pursuant to Exemption (b)(1) . . . is classified and requires a classification marking at the 'Secret' level because 'the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security.'"); *see also* Sherman Decl. ¶¶ 8, 22, 28, 47; Hardy Decl. ¶ 22.  Thus, condition (1) of Executive Order 13526 is satisfied here.

**B.      All of the Information Withheld Pursuant to Exemption (b)(1) is Government Information.**

The second condition of Executive Order 13526 is also met by the challenged (b)(1) withholdings.  *See* 75 Fed. Reg. at 707 (requiring that information originally classified under Executive Order 13526 be "owned by, produced by or for, or [be] under the control of the United States Government").  The United States government owns or controls the information that has been withheld from Plaintiff.  *See* Hardy Decl. ¶ 22 ("I determined th[e] classified information is owned by, was produced by or for, and/or is under the control of the U.S. Government."); Sherman Decl. ¶ 15 ("I have determined that the responsive material at issue was properly withheld, as all of this information is

owned by, produced for, or under the control of the U.S. Government and is currently and

properly classified in accordance with E.O. 13526."). Thus, the second condition is met.

C.      **All of the Challenged (b)(1) Withholdings Are Within a Category
        Identified in Section 1.4 of Executive Order No. 13526.**

The challenged (b)(1) withholdings satisfy the third condition of Executive Order

13526. *See* 75 Fed. Reg. at 707 (requiring that information originally classified under

this order be within a category identified in Section 1.4). Section 1.4's categories include

information concerning "intelligence activities (including covert action), intelligence

sources or methods or cryptology," "foreign relations or foreign activities of the United

States, including confidential sources," and "vulnerabilities or capabilities of systems,

installations, infrastructures, projects, plans, or protection services relating to national

security." *Id.* at 709. The information whose withholding Plaintiff challenges concerns

those subjects. *See* Sherman Decl. ¶ 14; Hardy Decl. ¶¶ 22, 24, 26.

The NSA withholdings pursuant to (b)(1) generally fall into one of three

categories: "(1) descriptions of the threat to national security posed by adversaries;[16] (2)

operational details of NSA SIGINT [Signals Intelligence] collection, such as the tools

and techniques employed;[17] [and] (3) the identities of communications service providers

---

[16]   Information within this category was withheld from:
Document 3a:  pp. 1-2, pp. 6-10, pp. 18-22, pp. 34-36, pp. 66-67, p. 72
Document 3b (Decl.):  pp. 2-3, pp. 8-10
*See* Sherman Decl. ¶ 21.

[17]   Information within this category was withheld from:
Document 2a:  pp. 8-13, pp. 15-21, p. 28, p. 31, p. 35-36, p. 39
Document 2c:  pp. 1-2
Document 2d:  pp. 1-3, pp. 5-8
Document 3a:  pp. 1-3, pp. 10-13, pp. 24-27, pp. 31-32, pp. 34-39, pp. 44-45, pp. 48-49
Document 3b (Supp. Mem.):  pp. 1-8, pp. 10-23, pp. 25-27
Document 3b (Decl.):  p. 2, pp. 5-19
Document 3c:  pp. 7-8, p. 11
Document 3d:  pp. 5-10, pp. 12-13, p. 16
Document 3e:  pp. 2-16, pp. 19-21

that have been compelled to provide assistance to the Government by the Foreign

Intelligence Surveillance Court (FISC)."[18]  Sherman Decl. ¶ 9; *see also id.* ¶ 21 ("NSA

withheld from disclosure information relating to the threat to national security posed by

the targets of the FISC orders at issue."); *id.* ¶ 27 ("NSA withheld from disclosure

information concerning the technical means by which NSA conducts its SIGINT mission

and other operational details."); *id.* ¶ 37 ("NSA has also withheld all identities of

communication service providers subject to the FISC orders at issue, along with

information that would reveal the number of providers subject to such orders.").  Such

information clearly satisfies the substantive requirements of Executive Order 13526.  *See

id.* ¶ 14 (explaining that "[t]he categories of classified information in the NSA documents

at issue here are those found in Section 1.4(c), which includes intelligence activities

(including covert action), intelligence sources and methods, or cryptology; Section 1.4(d),

which includes foreign relations or foreign activities of the United States, including

confidential sources; and Section 1.4(g), which includes vulnerabilities or capabilities of

systems, installations, infrastructures, projects, plans, or protection services relating to the

national security").

---

Document 3f:  pp. 5-10, pp. 12-13, pp. 15-16
*See* Sherman Decl. ¶ 27.

[18]   Information within this category was withheld from:
Document 3a:  p. 32, p. 36
Document 3b (Supp. Mem.):  p. 18
Document 3c:  pp. 8-9
Document 3d:  pp. 6-7, pp. 10-11
Document 3e:  p. 4
Document 3f:  pp. 6-7, pp. 10-11
*See* Sherman Decl. ¶ 37.

The Hardy Declaration demonstrates that the FBI information withheld from Plaintiff concerns similar subjects. *See* Hardy Decl. ¶¶ 23-26. Specifically, that information falls into one of four categories: "(a) detailed intelligence activity information compiled regarding a specific individual or organization of national security interest;[19] (b) information that would reveal specific foreign counterintelligence investigations;[20] (c) standard terminology and phraseology associated with national security investigations;[21] and (d) acronyms which identify specific intelligence activities or methods."[22] *Id.* ¶ 26; *see also id.* ¶ 28 (describing certain of the withheld information as identifying "current, past or prospective FBI foreign counterintelligence investigations"); *id.* ¶ 30 (describing one piece of information withheld as "an acronym

---

[19] Information within this category was withheld from:
Document 2a:  pp. 20-21, p. 28, p. 31, pp. 35-36
Document 2c:  Ex. D
Document 2d:  p. 10
Document 3a:  pp. 19-20, pp. 26-31, p. 33, pp. 40-47, p. 67
Document 3b (Supp. Mem.):  pp. 13-15, pp. 20-21, pp. 23-26
Document 3c:  pp. 10-11
Document 3d:  pp. 15-16
Document 3e:  pp. 5-6, pp. 11-13
Document 3f:  p. 14
*See* Hardy Decl. ¶ 27 n.5.

[20] Information within this category was withheld from:
Document 2a:  p. 23, p. 28-29
Document 2d:  p. 10
Document 3a:  pp. 9-10, pp. 19-20, p. 22, p. 26, pp. 28-31, p. 33, pp. 40-48, p. 67
Document 3b (Supp. Mem.):  pp. 12-14, pp. 25-26
Document 3c: pp. 10-11
Document 3d:  p. 15
Document 3e:  pp. 5-6
Document 3f:  p. 14
*See* Hardy Decl. ¶ 28 n.6.

[21] Information within this category was withheld from:
Document 3a:  p. 29, p. 42
Document 3b (Supp. Mem.):  p. 13, p. 25
*See* Hardy Decl. ¶ 29 n.7.

[22] Information within this category was withheld from:
Document 2d:  p. 10
*See* Hardy Decl. ¶ 30 n.8.

that identifies a specific intelligence method used by the FBI in its intelligence-gathering activities").  Accordingly, that information too is within the scope of Section 1.4 and thus satisfies the third requirement for classification under Executive Order 13526.

      **D.**     **The Unauthorized Disclosure of the Information Withheld Pursuant to Exemption (b)(1) Could Damage National Security.**

Notwithstanding that the government has declassified certain information related to the collection of foreign intelligence pursuant to the Foreign Intelligence Surveillance Act ("FISA") (as amended), other information continues to be classified at the TOP SECRET and SECRET levels.  That information consists of previously undisclosed and classified information that if disclosed could be expected to cause exceptionally grave or serious damage to the national security of the United States.  *See, e.g.,* Hardy Decl. ¶¶ 11, 28; Sherman Decl. ¶¶ 22, 28, 40.  The D.C. Circuit has recognized that "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself."  *Larson v. Department of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (internal quotations and citations omitted); *ACLU v. Department of Justice*, 681 F.3d 61, 71 (2d Cir. 2012) (same); *see also Shapiro*, 37 F. Supp. 3d at 25; *ACLU v. CIA*, 892 F. Supp. 2d 234, 247 (D.D.C. 2012).  Thus, the government's declassification of certain information concerning foreign intelligence collection pursuant to FISA does not suggest anything about the harm that could result from the disclosure of the previously undisclosed, classified information at issue in this case.

The fourth condition of information classified pursuant to Executive Order 13526 requires, as here, that "the original classification authority determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security."  75 Fed. Reg. at 707.  Recognizing that national security is a uniquely executive purview, courts typically defer to such an agency determination. *Center for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information."); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case").  Indeed, "[t]his is necessarily a region for forecasts in which informed judgment as to potential future harm should be respected."  *Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C. Cir. 1982); *see also Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, No. 13-0330, 2014 WL 6478794, at *7 (D.D.C. Nov. 20, 2014) (noting that "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record" (quoting *Center for Nat'l Sec. Studies*, 331 F.3d at 927)).  "Ultimately, '[t]he test is not whether the court personally agrees in full with the [agency's] evaluation of the danger – rather, the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the [agency] is expert and given by Congress a special role.'"  *Labow v. United*

*States Dep't of Justice*, No. 11-1256, 2014 WL 4368954, at *6 (D.D.C. Sept. 4, 2014)

(quoting *Gardels*, 689 F.2d at 1105)).  Thus, the Court should defer here to Mr. Hardy's

and Dr. Sherman's assessments of the likely repercussions to the national security from

disclosure of the information the government continues to withhold pursuant to

exemption (b)(1).

**1. The Unauthorized Disclosure of the NSA Information Withheld from Plaintiff Reasonably Could Cause Exceptionally Grave or Serious Damage to the National Security.**

In his declaration, Dr. Sherman identifies several harms that would attend the

unauthorized disclosure of Document 1a, which was withheld in full, and the three

categories of NSA information withheld pursuant to (b)(1) from the other challenged

documents.  *See* Sherman Decl. ¶¶ 23, 29-32, 38-39, and 47.  Given that this district court

already has upheld pursuant to that exemption the withholding of the citation of

Document 1a, (*see EFF v. DOJ,* No. 12-1441, 2014 WL 3542124, at * 6), it is

unsurprising that the provision of the document itself reasonably could damage the

national security, especially in light of the information already disclosed about that

document.  *See* Sherman Decl. ¶ 46 (describing Document 1a as a FISC Opinion that

"conclud[ed] that Section 1809(a)(2) precluded the Court from approving the

government's proposed use of, among other things, certain data acquired by NSA without

statutory authority through its 'upstream collection'").  Indeed, as explained in the

Sherman Declaration, "[w]hile certain information regarding NSA's 'Upstream'

collection capability has been declassified and publicly disclosed, certain other

information regarding the capability remains currently and properly classified."  *Id*. ¶ 47.

Such disclosure "could allow adversaries to develop countermeasures to frustrate NSA's

collection of information crucial to the national security."  *Id.*  "If the effectiveness of the

21

intelligence method has been degraded, NSA would no longer be able to rely on this method, and NSA's ability to collect these communications would then be compromised." *Id*. ¶ 49.  Moreover, "[a] lost or reduced ability to collect communications of targets, particularly those associated with known and suspected terrorist operatives, would greatly impact the effectiveness of NSA's SIGINT mission, including its support to the Government's counterterrorism efforts." *Id.*  Thus, the withholding in full of Document 1a satisfies all conditions for exemption under (b)(1).

The same is also true of the three categories of information withheld from the partially redacted documents still in contention: (1) descriptions of the threat to national security posed by adversaries; (2) operational details of NSA SIGINT collection; and (3) identities of communications service provides subject to the FISC orders at issue. Category 1 encompasses detailed information "concerning proposed targets for electronic surveillance" that "the Government is statutorily obligated to provide the [FISC]" "[i]n support of [its] application to the FISC for authorization to undertake electronic surveillance against agents of foreign powers." *Id*. ¶ 21 (describing such information as including "the threat those powers pose to the United States, tradecraft employed by the targets to evade surveillance, and detailed descriptions of the targets' organization and makeup").  The disclosure of such information "would publicly reveal the identities of particular targets of interest to NSA, the capability of NSA and the IC to collect information about these targets, and the limits of the Government's collection efforts." *Id.* ¶ 23.  "Alerting our adversaries to their status as the targets of NSA collection efforts could cause th[em ] to take steps to circumvent collection," which could "inhibit access

to the target's communications, thereby denying the United States access to information crucial to the national security." *Id.*

Similar harms reasonably could attend disclosure of the second category of information withheld from Plaintiff, namely, "the technical means by which NSA conducts its SIGINT mission and other operational details." *Id.* ¶ 27 (describing such information as including "the techniques and tools employed to collect communications of foreign intelligence targets, the types of communications and facilities targeted, the procedures by which particular communications are targeted, analytic tools and methodologies applied to collected data, the identification of countermeasures used by foreign powers, methods by which NSA determines the foreignness of selectors, the scope and limitations of NSA's collection capabilities, and NSA's foreign partners"). The disclosure of this kind of information "would alert targets to the vulnerabilities of their communications (and conversely, which of their communications are not vulnerable)" and "also alert adversaries to the Government's awareness of specific tradecraft used to protect the adversaries' communications and the methods by which such tradecraft is defeated." *Id.* ¶ 29. "Once alerted, adversaries could develop additional countermeasures to thwart collection of electronic communications."[23] *Id.*

---

[23] *See, e.g.,* Sherman Decl. ¶ 30 (explaining that "any release of additional operational details about these collection efforts would reveal NSA's uses of specific sources and methods that could assist adversaries in undermining NSA's national security mission"); *id.* ¶ 31 (explaining that "disclosure of the specific facilities from which communications were collected under particular authorities would alert the targets to which communications NSA did and did not collect, as well as reveal the nature and scope of particular NSA programs"); *id.* ¶ 32 (explaining that disclosure of the methods by which NSA determines the foreignness of selectors and the procedures by which particular communications are targeted would reveal information from which targets could derive countermeasures to evade NSA surveillance by masquerading as persons whose communications either explicitly are not or may not be authorized for collection"); *id.* (explaining that "revealing the precise methods and procedures by which NSA determines that it is authorized to target particular communications could encourage adversaries to adopt countermeasures that would make it more difficult to determine accurately the foreignness of their communications thereby hindering the Government's collection of information crucial to the national security of the United States").

Finally, the disclosure of the identity or number of communications service providers subject to FISC orders "would alert targets to which of their communications NSA did and did not collect, as well as the nature and scope of NSA's collection efforts." *Id.* ¶ 39. Because "[f]oreign intelligence targets know how they communicate," they "would know, upon a disclosure . . . of the identity of any particular communications service provider, which of their electronic communications were potentially vulnerable to collection, querying, and analysis (and, conversely, which of their communications may not have been vulnerable)." *Id.* ¶ 38. "Once alerted, targets could potentially frustrate NSA collection by switching to a provider that has not been identified," which "may result in denial of access to targets' communications" and the "loss of access to information crucial to the national security and defense of the United States." *Id.* Because the Court should defer to such predictions of harm, (*Center for Nat'l Sec. Studies*, 331 F.3d at 927), the government's withholdings of NSA information pursuant to (b)(1) should be upheld.

> **2. The Unauthorized Disclosure of the FBI Information Withheld from Plaintiff Reasonably Could Cause Serious Damage to the National Security.**

The Hardy Declaration identifies several harms that would attend the unauthorized disclosure of the categories of FBI information withheld from the challenged documents. *See* Hardy Decl. ¶¶ 27-29, 31. The disclosure of classified detailed intelligence activities  "would:  (a) reveal actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific time period." *Id*. ¶ 27. Likewise, the disclosure of the targets of foreign counterintelligence investigations "would reveal actual

intelligence activity or method used by the FBI and directed at a specific target," as well
as "permit hostile governments or terrorists groups to appraise the scope, focus, location,
target, and capabilities of the FBI's intelligence-gathering methods and activities." *Id.* ¶
28. Hostile targets thereby would be able "to devise countermeasures to circumvent these
intelligence activities or method rend[er]ing them useless." *Id.*

      The unauthorized disclosure of the FBI-specific terminology that was withheld
from Plaintiff "could reveal the intelligence methods or activities used in national
security investigations as well as disclose the scope and depth of the FBI's efforts in a
particular investigation or the amount of resources the FBI expends on a particular
matter." *Id.* ¶ 29; *see also id.* ¶ 30 (explaining that disclosure of particular acronym "that
identifies a specific intelligence method used by the FBI" "could permit hostile analysts
to ascertain the specific nature of the FBI's investigations as well as determine the
employed method"). Here again, the Court should defer to such predictions of the harm
that would attend the unauthorized disclosure of the FBI information withheld from
Plaintiff, and uphold its withholding under exemption (b)(1). *See id.* ¶ 31.

## III.    THE COURT SHOULD UPHOLD THE CHALLENGED WITHHOLDINGS UNDER EXEMPTION (B)(3).

      Although the Court need not reach the Department's exemption (b)(3) argument
(except as to one discrete piece of NSA organizational information withheld), that
exemption too is dispositive of this case.[24] Exemption (b)(3) exempts from FOIA

---

[24] With the exception of the government's withholding the identity of an NSA office involved in foreign
intelligence collection, the Department's (b)(3) assertions are coextensive with the (b)(1) assertions.
Therefore, if the Court upholds the challenged withholdings pursuant to (b)(1), the Court need not reach the
government's (b)(3) arguments except as to that specific piece of information. *See ACLU v. CIA*, 892 F.
Supp. 2d at 245 ("A showing that information satisfies any one FOIA exemption is sufficient to justify
withholding."); *e.g., Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 n.10 (D.D.C. 2010) ("Because the CIA seeks
to withhold the same information under both Exemption 1 and Exemption 3, and because the defendant has

information whose disclosure is prohibited by *another* statute, if that statute either: (A) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue;" or (B) "establishes a particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i)-(ii). This other statute "must, on its face, exempt matters from disclosure." *Reporters Comm. for Freedom of Press v. Department of Justice*, 816 F.2d 730, 735 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); *see also Essential Info., Inc. v. USIA*, 134 F.3d 1165, 1168 (D.C. Cir. 1998) (noting that a statute that prohibits "dissemination" and "distribution" of certain information within the United States qualifies as an exemption (b)(3) "nondisclosure" statute). Exemption (b)(3) "therefore, is unlike other FOIA exemptions," (*Shapiro*, 37 F. Supp. 3d at 26): "[I]ts applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990) (same).

Here again, deference to the agency's determination that withheld material is within the coverage of an exemption (b)(3) statute is appropriate. *See Reporters Comm.*, 816 F.2d at 735 n.5 (noting that "it may be proper to give deference to an agency's interpretation of what matters are covered by a statute, once the court is satisfied that the statute is in fact an Exemption 3 withholding statute"); *see also CIA v. Sims*, 471 U.S. 159, 179 (1985) (noting that "decisions of the Director [of the CIA], who must of course

---

properly invoked Exemption 1, the court does not consider whether the defendant properly invoked Exemption 3." (citation omitted)).

be familiar with 'the whole picture,' as judges are not, are worthy of great deference

given the magnitude of the national security interests and potential risks at stake")));

*Halperin*, 629 F.2d at 148.  Three such statutes clearly are implicated by the information

withheld from Plaintiff: (1) the National Security Agency Act of 1959, 50 U.S.C. § 3605,

(2) 18 U.S.C. § 798, and (3) the National Security Act of 1947, as amended by the

Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. §

3024(i)(1).  Together, these statutes prohibit the disclosure of any of the withheld

information still in dispute.

The first of these statutes, a statutory privilege unique to NSA, provides that

"[n]othing in this chapter or any other law . . . shall be construed to require the disclosure

of the organization or any function of the National Security Agency, or any information

with respect to the activities thereof."  50 U.S.C. § 3605.  This language thus provides

absolute protection from disclosure of *any* information concerning NSA activities.

*Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996); *Hayden v. NSA*, 608 F.2d 1381, 1389

(D.C. Cir. 1979).  As explained in the Sherman Declaration, the withheld NSA

information identifies "the targets subject to the FISC orders," (Sherman Decl. ¶ 25), the

operational details about NSA's collection efforts, (*id.* ¶¶ 34, 47), "[t]he identities of the

providers and the number of providers" subject to FISC orders, (*id.* ¶ 42), and

"information about the internal organization of NSA," (*id.* ¶ 45).[25]  Each of these

categories of information clearly relates to the organization or a function of the NSA.  *See*

---

[25]  Information within this category was withheld from:
Document 3a:  p. 5, p. 50
Document 3d:  p. 13
Document 3f:  p. 13
*See* Sherman Decl. ¶ 45.

*id*. ¶¶ 25, 34, 42, 45, 47.  Accordingly, that information is within the protection of the

National Security Agency Act of 1959 and cannot be compelled here.

Such information also is prohibited from disclosure by the second applicable

statute, 18 U.S.C. § 798.  That statute prohibits the unauthorized disclosure of classified

information: (1) concerning the communications intelligence activities of the United

States; or (2) obtained by the process of communications intelligence derived from the

communications of any foreign government.  *See* Sherman Decl. ¶ 19.  The term

"communications intelligence" encompasses "the 'procedures and methods used in the

interception of communications and the obtaining of information from such

communications by other than the intended recipients.'"  *See id.*; *see also* 18 U.S.C.

§ 798(b).  The already-identified categories of withheld NSA information are also clearly

within that definition as well.  *See* Sherman Decl. ¶¶ 26, 36, 44, 47.  Thus, 18 U.S.C.

§ 798 is an independent and alternative prohibition against their disclosure here.

Finally, Section 102A(i)(1) of the National Security Act of 1947, as amended by

the IRTPA, 50 U.S.C. § 3024(i)(1), "protect[s] intelligence sources and methods from

unauthorized disclosure," and thus provides an absolute protection similar to the

protection in the National Security Agency Act of 1959.  *See* Sherman Decl. ¶ 18 ("Like

the protection afforded to core NSA activities by Section 6 of the NSA Act, the

protection afforded [by Section 102A(i)(1)] to intelligence sources and methods is

absolute.").  As evident from their descriptions, the NSA withholdings constitute

intelligence sources and methods and their disclosure therefore is prohibited alternatively

by Section 102A(i)(1).  *See id.* ¶ 26 (explaining that disclosure of the threat descriptions

"could reveal the sources or methods used to collect intelligence pertaining to these

threats"); *id.* 35 ("The withheld operational details, such as the technical means of collection and analytic methodology, constitute the sources and methods used by NSA to carry out its SIGINT mission."); *id.* ¶ 43 ("The specified communications service providers are intelligence sources for communications intelligence.").  Because Section 102A(i)(1) affords absolute protection to "information pertaining to intelligence sources and methods used by the [Intelligence Community] as a whole," the FBI intelligence sources and methods withheld from Plaintiff also are within the scope of this (b)(3) statute.[26]  Hardy Decl. ¶ 35.

*   *   *   *   *

Because all of the withholdings still in contention fall within one or more of the (b)(3) statutes identified and discussed in this Part, none of the withheld information can be disclosed, and the government appropriately invoked exemption (b)(3) as to that information.

---

[26]  Information within this category was withheld from:
Document 2a:  pp. 20-21, p. 23, pp. 28-29, p. 31, pp. 35-36
Document 2c:  Ex. D
Document 2d:  p. 10
Document 3a:  pp. 9-10, pp. 19-20, p. 22, pp. 26-31, p. 33, pp. 40-47, p. 67
Document 3b (Supp. Mem.):  p. 9, pp. 13-15, pp. 20-21, pp. 23-26
Document 3c:  pp. 10-11
Document 3d:  pp. 15-16
Document 3e:  pp. 5-6, pp. 11-13
Document 3f:  pp. 14-15
*See* Hardy Decl. ¶ 35 n.11.

**IV.    THE COURT SHOULD UPHOLD THE GOVERNMENT'S
           WITHHOLDING OF INFORMATION PURSUANT TO EXEMPTION
           (B)(7).**

Certain of the challenged withholdings protect law enforcement techniques and

procedures or law-enforcement investigations and thus are additionally exempt under

(b)(7).[27]  Exemption (b)(7) "protects from disclosure 'records or information compiled

for law enforcement purposes' under certain circumstances that are specifically

enumerated in subsections (A) through (F)."  *CREW v. National Indian Gaming Comm'n*,

467 F. Supp. 2d 40, 50-51 (D.D.C. 2006); *see also Cunningham v. Department of Justice*,

40 F. Supp. 3d 71, 86 (D.D.C. 2014) (same).  Here, the Department invokes subsections

(A) and (E) which, respectively, protect from disclosure information that could

reasonably be expected to interfere with law enforcement proceedings and information

that would disclose law enforcement techniques and procedures.  In determining the

propriety of these assertions, the Court "must first determine whether the withheld

information was 'compiled for law enforcement purposes'" and then whether the

Department "satisf[ies] the specific requirements of [those ] subsections."  *CREW*, 467 F.

Supp. 2d at 51.  The Hardy Declaration demonstrates that both conditions are met.  *See*

Hardy Decl. ¶¶ 36-54.

**A.    The Withholdings Pursuant to Exemption (b)(7) Were Compiled for
           Law Enforcement Purposes.**

The challenged withholdings over which exemption (b)(7) was asserted meet the

"threshold requirement [of being] . . . 'compiled for law enforcement purposes.'"  *Public*

*Emps. for Envtl. Responsibility v. United States Section, Int'l Boundary & Water*

*Comm'n*, 740 F.3d 195, 202-03 (D.C. Cir. 2014).  "Law enforcement entails more than

---

[27]  If the withholdings of FBI information are upheld either under exemption (b)(1) or (b)(3), then the Court
need not reach the (b)(7) arguments.  No information was withheld solely pursuant to exemption (b)(7).

just investigating and prosecuting individuals *after* a violation of the law." *Id.* at 203.

The "ordinary understanding" of that term "includes . . . proactive steps designed to

prevent criminal activity and to maintain security." *Id.* (quoting *Milner v. Department of

Navy*, 131 S. Ct. 1259, 1272 (2011)). "Likewise, steps by law enforcement officers to

prevent terrorism surely fulfill 'law enforcement purposes.'" *Public Emps.*, 740 F.3d at

203. The term "compiled" "requires that a document be created, gathered, or used by an

agency for law enforcement purposes at some time before the agency invokes the

exemption." *Id*. If, as here, "the agency's principal function is law enforcement, [courts]

are 'more deferential' to the agency's claimed purpose for the particular records." *Id.*;

*see also Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002) (characterizing the FBI as

an agency "whose principal function is criminal law enforcement"); *see also* Hardy Decl.

¶¶ 7, 10. As demonstrated by the Hardy declaration, the compiled-for-law-enforcement-

purposes requirement is met here. *See* Hardy Decl. ¶¶ 36-37. The responsive documents

at issue "are FISA related and pertain to the government's ability, under FISC approval,

to conduct electronic surveillance on electronic communications of foreign targets with

the purpose of investigating and gathering intelligence information with the goal of

apprehending and prosecuting subjects who have committed acts of terrorism against the

United States. As such, the documents relate to the enforcement of federal laws and such

activity is within the law enforcement duty of the FBI." Hardy Decl. ¶ 37. The threshold

requirement for invocation of (b)(7) is therefore met.

**B.     The Disclosure of the Information Over Which the Department Has Asserted Exemption (b)(7)(A) Would Interfere With Law Enforcement Investigations.**

Subsection A of exemption (b)(7) is implicated because certain of the withheld information, if released, could interfere with pending law enforcement investigations. *See* Hardy Decl. ¶ 40.  Exemption (b)(7)(A) "authorizes an agency to withhold 'records or information compiled for law enforcement purposes, but only to the extent that production . . . could reasonably be expected to interfere with enforcement proceedings.'" *CREW*, 467 F. Supp. 2d at 51; *see also Edmonds v. FBI*, 272 F. Supp. 2d 35, 54 (D.D.C. 2003) (explaining that to fall within that exemption, the information "first, [] must be 'complied for law enforcement purposes,' and second, its release must 'interfere with enforcement proceedings'").  Although the agency must demonstrate "that release of the records reasonably could be expected to cause some articulable harm," the government "need not submit declarations that reveal the exact nature and purpose of its investigations in order to satisfy FOIA – Exemption 7(A) exists precisely to shield that sort of revelation."  *CREW*, 467 F. Supp. 2d at 51-52.  As explained in the Hardy Declaration, the FBI withheld pursuant to that exemption certain information "with a nexus" to "pending investigations" because its disclosure could "identi[fy ] other third parties who may also be under investigation," "reve[al ] sensitive law enforcement techniques used in these and other national security investigations," and "reveal[] the FBI's focus in national security investigations."[28]  Hardy Decl. ¶ 40.  Thus, the invocation of exemption (b)(7)(A) was proper as to that information.

---

[28]  Information within this category was withheld from:
Document 3a:  pp. 9-10, p. 19, p. 22, p. 26, pp. 28-30, p. 33, pp. 41-42, pp. 45-47
Document 3b (Supp. Mem.):  pp. 12-14, p. 20, p. 22, pp. 23-27
Document 3e:  p. 11

**C.     The Information Over Which the Department Has Asserted Exemption (b)(7)(E) Constitutes Law Enforcement Techniques and Procedures.**

Subsection (E) of exemption (b)(7) is implicated here because the withholdings "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions" and thereby "risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption (b)(7)(E)'s requirement that disclosure risk circumvention of the law "sets a relatively low bar for the agency to justify withholding." *Shapiro v. DOJ*, No. 13-595, 2015 WL 410566, at *7 (D.D.C. Feb. 2, 2015) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). "To clear that relatively low bar an agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Public Emps.*, 740 F.3d at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). This "low bar" is met by the information over which the government has asserted exemption (b)(7)(E). *See* Hardy Decl. ¶ 44 (explaining that the revelation of the withheld investigative techniques and procedures "could enable the targets of these techniques to develop countermeasures to avoid detection and circumvent the FBI's law enforcement efforts"); *id.* ¶ 45 (explaining that as a result of such revelations "individuals, terrorist organizations, and foreign nations c[ould] educate themselves on FBI's information gathering techniques, thereby enhancing their ability to develop countermeasures and avoid detection"). Specifically, the FBI has withheld "investigative techniques and procedures" that, if disclosed, "would enable the foreign targets of those techniques to avoid detection or

---

*See* Hardy Decl. ¶ 41 n.14.

develop countermeasures to circumvent the FBI's ability to effectively use such critical law enforcement techniques in current and future national security investigations, thereby enabling circumvention of the law."[29]  *Id.* ¶ 48.  The "methods the FBI uses to collect and analyze information obtained through Section 702 of the FISA" would disclose "how and from where the FBI collects information, and the methodologies employed to analyze it."[30]  *Id.* ¶ 51.  Clearly, "[t]he relative utility of these techniques could be diminished if information about the actual techniques was released."  *Id.*; *see also id.* ¶ 54 (explaining that disclosure of the "locations and types of monitoring used by the FBI" "would allow individuals and terrorist organizations to develop and utilize countermeasures to defeat and avoid surveillance").[31]

---

[29]  Information within this category was withheld from:
Document 2c:  Ex. D
Document 2d:  p. 10
Document 3a:  p. 9, pp. 19-20, p. 22, pp. 26-31, p. 33, pp. 41-47, p. 67
Document 3b (Supp. Mem.):  p. 9, pp. 13-15, pp. 20-21, pp. 23-26
Document 3d:  p. 16
Document 3e:  pp. 5-6, pp. 11-13
*See* Hardy Decl. ¶ 48 n.18.

[30]  Information within this category was withheld from:
Document 2a:  pp. 20-24, pp. 28-29, p. 31, pp. 35-36
Document 2c:  Ex. D
Document 2d:  p. 10
Document 3a:  p. 9, pp. 19-20, p. 22, p. 26, pp. 28-31, p. 33, pp. 41-42, pp. 45-47, p. 67
Document 3b (Supp. Mem.):  pp. 13-14, pp. 20-21, pp. 23-26
Document 3e:  pp. 5-6, pp. 11-13
*See* Hardy Decl. ¶ 52 n.21.

[31]  Information within this category was withheld from Document 3e on pages 11-13.  *See* Hardy Decl. ¶ 54 n.23.

34

The FBI also withheld information from "non-public databases [] used for official law enforcement purposes" that, if disclosed, "could enable terrorist[s] to employ countermeasures to avoid detection" and "impede the FBI's investigative effectiveness and potentially aid in circumvention of the techniques."[32]  *Id.* ¶ 49.

Finally, the FBI withheld information concerning the investigative focus of specific investigations[33] and sensitive law-enforcement techniques used to conduct national security investigations.[34]  The justifications for the withholding of such information are classified and thus cannot be discussed on the public record.  *See id.* ¶¶ 50, 53 (Classified Hardy Declaration submitted *ex parte* and *in camera*).  Based on that classified explanation and the other justifications proffered in the Hardy Declaration, the Court should uphold the withholdings of FBI information alternatively under exemption (b)(7).

---

[32] Information within this category was withheld from:
Document 2a:  p. 21
*See* Hardy Decl. ¶ 49 n.19.

[33]  Information within this category was withheld from:
Document 3a:  p. 9, pp. 19-20, p. 22, p. 26, pp. 28-31, p. 33, pp. 41-42, pp. 45-47, p. 67
Document 3b (Supp. Mem.):  pp. 13-14, pp. 20-21, pp. 23-26
Document 3e:  pp. 11-13
*See* Hardy Decl. ¶ 53 n.22.

[34]  Information within this category was withheld from:
Document 2a:  pp. 20-21, p. 23, pp. 28-29, p. 31, pp. 35-36
Document 2c:  Ex. D
Document 2d:  p. 10
Document 3a:  p. 9, pp. 19-20, p. 22, pp. 26-31, p. 33, pp. 41-47, p. 67
Document 3b (Supp. Mem.):  p. 9, pp. 13-15, pp. 20-21, pp. 23-26
Document 3d:  p. 16
Document 3e:  pp. 5-6, pp. 11-13
*See* Hardy Decl. ¶ 50 n.20.

## V.    THE DEPARTMENT SATISFIED FOIA'S SEGREGABILITY REQUIREMENT.

The patchwork of challenged withholdings reflects the surgical precision with which the government reviewed the responsive records for segregable, non-exempt information.  *See* Sherman Decl. ¶ 50; Hardy Decl. ¶ 11.  FOIA requires that "[a]ny reasonably segregable portion of a record [] be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see also Mead Data Ctr., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").  The agency "bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents."  *Soghoian v. United States Dep't of Justice*, 885 F. Supp. 2d 62, 76 (D.D.C. 2012) (citation omitted).  "With the segregability analysis, as with the exemption analyses, the Court affords government affidavits a rebuttable presumption of good faith, and may rely on those affidavits so long as they show 'with reasonable specificity' why withheld information cannot be further segregated."  *ACLU v. CIA*, 892 F. Supp. 2d at 250 (citation omitted).  "The Government is acutely aware of the consequences of revealing filaments of its intelligence gathering[, a]nd its assessments are informed by hard-learned lessons."  *ACLU v. FBI*, No. 11cv7562, 2015 WL 1566775, at *4 (S.D.N.Y. Mar. 31, 2015).  Thus "[t]he intelligence community is tasked with staying at least one step ahead of evolving threats."  *Id.*

With few exceptions, the challenged redactions consist of small areas within paragraphs or blacked-out areas self-contained on a page.  *See* Sherman Decl. ¶ 50 ("Multiple agencies performed an intensive, line-by-line review of each document," and

36

"redactions were surgically applied to protect information exempted from release under the FOIA"); Hardy Decl. ¶ 11 ("All documents have been thoroughly reviewed to achieve maximum disclosure consistent with the access provisions of the FOIA.").  The one document that was withheld in full could not be disclosed because "in the context of this case," any further disclosure of its contents could "reasonably be expected to reveal classified national security information."  Sherman Decl. ¶ 52 (explaining that in his judgment no further information could be disclosed from Document 1a "given the nature of the document and the information that has already been released").  The government continues to withhold only that information properly withheld pursuant to the FOIA exemptions discussed herein.  *See* Sherman Decl. ¶¶ 51-52; Hardy Decl. ¶¶ 11, 55-56. That is all FOIA requires, and thus the Department is entitled to judgment in its favor.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant this motion and enter judgment in favor of the Department of Justice.

Dated:  May 1, 2015                    Respectfully submitted,

                                       BENJAMIN C. MIZER
                                       Principal Deputy Assistant Attorney General

                                       ELIZABETH J. SHAPIRO
                                       Deputy Branch Director
                                       Civil Division

                                       /s/ Jacqueline Coleman Snead
                                       JACQUELINE COLEMAN SNEAD (D.C. Bar 459548)
                                       Senior Counsel
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Ave, NW
                                       Washington, D.C.  20530
                                       Telephone:  (202) 514-3418

Fax:  (202) 616-8470
E-mail: Jacqueline.Snead@usdoj.gov

**Counsel for the Department of Justice**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
ELECTRONIC FRONTIER                )
FOUNDATION,                        )
)
     Plaintiff,                    )
)
         v.                        )      Civil Action No. 14-760-RMC
)
)
DEPARTMENT OF JUSTICE,             )
)
     Defendant.                    )
)
_____)

**PROPOSED ORDER**

     Upon consideration of the Department of Justice's Motion for Summary

Judgment, the opposition thereto, and the complete record in the case, it is hereby

     ORDERED that the Department's motion is GRANTED.  Judgment is entered in

favor of the Department of Justice.

     SO ORDERED.

Date: _____          _____

                                United States District Court Judge