

SECRET//NOFORN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:14-cv-00760 (RMC) |
| v. | ) ) | |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

~~CLASSIFIED~~ Unclassified

**DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     (U) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)     (U) In my official capacity as Section Chief of RID . . . of ten (10) Federal Bureau of Inves

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SECRET//NOFORN

Date: 04/28/2015
Classified By: C28W34B64
Derived From: NSICG
Reason: 1.4 C
Declassify on: 04/28/2040

~~SECRET//NOFORN~~

("FBIHQ") units and two (2) field operational service center units whose collective mission is to

effectively plan, develop, direct, and manage responses to requests for access to FBI records and

information pursuant to the FOIA, amended by the OPEN Government Act of 2007; the Open

FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney

General, and FBI policies and procedures; judicial decisions; and other Presidential and

Congressional directives. I have been designated by the Attorney General of the United States as

an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3

and 3.1. The statements contained in this declaration are based upon my personal knowledge,

upon information provided to me in my official capacity, and upon conclusions and

determinations reached and made in accordance therewith.

   (3)   (U) Due to the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

Specifically, I am aware of the FBI's handling of the Department of Justice's referrals to the FBI

from the National Security Division ("NSD"), pertaining to four (4) Freedom of Information Act

("FOIA") requests made by plaintiff, Electronic Frontier Foundation. The plaintiff requested

various records regarding the government's use of electronic surveillance through the means of

Foreign Intelligence Surveillance Act ("FISA") applications[1] and the issuance of orders from the

Foreign Intelligence Surveillance Court ("FISC").[2]

---

[1] (U) The Foreign Intelligence Surveillance Act ("FISA") of 1978, P.L. 95-511, 50 U.S.C. § 1801 et seq, as
amended, provides a statutory framework for the U.S. government to engage in electronic surveillance through the
installation and use of pen registers and trap and trace devices for the purpose of obtaining foreign intelligence
information. *See* Title IV of FISA, 50 U.S.C. §§ 1841-1846.

[2] (U) NSD will provide the Court with the applicable correspondence outlining details of plaintiff's FOIA requests.



~~SECRET//NOFORN~~



SECRET//NOFORN

(4)     (U) NSD located documents containing FBI equities while processing plaintiff's four (4) FOIA requests. The FBI received NSD's consult referral and assigned them FOIA Numbers 1290952, 1290914, 1290932, and 1290416. All referred documents are FISA-related and concern the use of electronic surveillance by the FBI in national security investigations. Accordingly, the FBI carefully reviewed and processed the referred documents under the FOIA and provided its response to NSD.

(5)     (U) On March 24, 2015, plaintiff notified NSD of its intended challenges as proposed in the Joint Proposed Dispositive Motion Briefing Schedule and Status Report filed on March 12, 2015. Plaintiff later notified NSD of its revised challenges on March 27, 2015.

(6)     (U) In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration is submitted in support of defendant's motion for summary judgment. The declaration will justify the FBI's withholding of certain equities pursuant to FOIA Exemptions 1, 3, 7(A), and 7(E). See 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(7)(A), and (b)(7)(E).

### BRIEF BACKGROUND ON SECTION 702

(7)     (U) The FBI is the primary investigative agency of the federal government. The FBI is charged with the authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency. This includes investigating terrorism threats and intelligence collection activities by our adversaries. The FBI performs a variety of functions on behalf of the U.S. government; however, some of the most critical functions relate to collecting and analyzing foreign intelligence and counterintelligence information. The analysis of this information is key to investigating known and/or suspected terrorists to protect the United States from harm.



SECRET//NOFORN

SECRET//NOFORN

(8)   (S//NF)



(9)   (S//NF)

SECRET//NOFORN

SECRET//NOFORN

(10)   (U) The FBI's ability to conduct electronic surveillance on foreign targets through various modes of electronic communications has proven to be an indispensable investigative tool and continues to serve as a building block in many of its counterterrorism and counterintelligence investigations.  This specific type of electronic surveillance has resulted in numerous benefits by providing the FBI valuable substantive information.  The intelligence gathered through this means has either confirmed prior investigative information or has contributed to the development of additional investigative information, and has been invaluable in providing investigative leads.  The FBI's collection of intelligence information through this form of electronic surveillance is an important intelligence source and method and investigative technique and procedure employed by the FBI to combat international terrorism.  The ability to use this specific intelligence method and investigative technique allows the FBI to carry out its responsibilities as a law enforcement agency and ensure the safety and security of the

SECRET//NOFORN



SECRET//NOFORN

American people.

## EXPLANATION OF THE CODED FORMAT USED FOR THE
## JUSTIFICATION OF DELETED MATERIAL

(11)   (U) All documents have been thoroughly reviewed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort has been made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. All material withheld by the FBI is exempt from disclosure pursuant to a FOIA exemption.

(12)   (U) The withholdings contain coded categories of exemptions which detail the nature of the withheld information. The coded categories are provided to aid the Court and plaintiff in reviewing the FBI's explanation for invoking various FOIA exemptions. A review of this information will reveal that all withheld material is exempt from disclosure pursuant to a FOIA exemption, or is not reasonably segregable from exempt information.

## MECHANICS OF USING THE CODED FORMAT
## WITH THE EXEMPTION CATEGORIES

(13)   (U) Each withholding has a marking next to it denoting the applicable FOIA exemption as well as a numerical designation identifying the specific nature of the withheld information. For example, on page 20 of Document 2a, Exemption (b)(7)(E)–2 is cited to protect the FBI's database information and/or printouts. The "(b)(7)(E)" designation refers to FOIA Exemption 7(E) concerning Investigative Techniques and Procedures. The numerical designation "2" following the (b)(7)(E) narrows the category of protected information from the main category to a more specific subcategory, "Database Information and/or Printouts." The

SECRET//NOFORN

SECRET//NOFORN

coded categories are used to assist the Court and plaintiff in their review of the FBI's

withholdings among the challenged documents.

## SUMMARY OF JUSTIFICATION CATEGORIES

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(1)** | **CLASSIFIED INFORMATION** |
| **(b)(1)-1** | 1.4(c) Intelligence Activities Sources and Methods [cited, at times, in conjunction with (b)(3) and/or (b)(7)(E)] |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| **(b)(3)-1** | Information Specifically Exempted by 50 U.S.C. § 3024 (i)(1) (National Security Act of 1947) [cited, at times, in conjunction with (b)(1) and/or (b)(7)(E)] |
| **Category (b)(7)(A)** | **PENDING LAW ENFORCEMENT PROCEEDINGS** |
| **(b)(7)(A)-1** | Information Which, If Disclosed, Could Reasonably Be Expected to Interfere With Pending Enforcement Proceedings [cited in conjunction with (b)(1), (b)(3), and (b)(7)(E)] |
| **Category (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| **(b)(7)(E)-1** | Investigative Techniques and Procedures [cited, at times, in conjunctions with (b)(1) and/or (b)(3)] |
| **(b)(7)(E)-2** | Database Information and/or Printouts [cited, at times, in conjunctions with (b)(1) and/or (b)(3)] |
| **(b)(7)(E)-3** | Specific Law Enforcement Technique Utilized to Conduct National Security Investigations [cited, at times, in conjunctions with (b)(1) and/or (b)(3)] |
| **(b)(7)(E)-4** | Collection/Analysis of Information [cited, at times, in conjunctions with (b)(1) and/or (b)(3)] |
| **(b)(7)(E)-5** | Investigative Focus of Specific Investigation [cited, at times, in conjunctions with (b)(1) and/or (b)(3)] |
| **(b)(7)(E)-6** | Information Regarding Targets, Dates, and Scope of Surveillance (e.g., location, types of devices, installation info.) [cited, at times, in conjunction with (b)(1) and/or (b)(3)] |

SECRET//NOFORN

~~SECRET//NOFORN~~

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **(b)(7)(E)-7** | Sensitive Docket Number – [Omitted] – Not Challenged by Plaintiff |

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

(14)    (U)  The FBI has processed and provided to NSD all non-exempt portions of the referred documents in connection with plaintiff's four (4) FOIA requests.  Below is a list of the challenged documents, the asserted FOIA exemptions, and the nature of the withheld information.

## CHALLENGED DOCUMENTS

(15)    (U)  The documents at issue are as follows:

1. Document 1a – No FBI equities.
2. Document 2a – Exemptions (b)(1), (b)(3), (b)(7)(A), and (b)(7)(E)
3. Document 2c – Exemptions (b)(1), (b)(3), and (b)(7)(E)
4. Document 2d – Exemptions (b)(1), (b)(3), and (b)(7)(E)
5. Document 3a – (b)(1), (b)(3), and (b)(7)(E)
6. Document 3b – (b)(1), (b)(3), and (b)(7)(E)
7. Document 3c – (b)(1) and (b)(3)
8. Document 3d – (b)(1), (b)(3), and (b)(7)(E)
9. Document 3e – (b)(1), (b)(3), (b)(7)(A), and (b)(7)(E)
10. Document 3f – (b)(1), (b)(3), and (b)(7)(E)

(16)    (U)  All documents listed above were either drafted by the U.S. government and filed with or issued by the FISC.  Below is a brief description of each challenged document that will be addressed in this declaration.[3]

---

[3] (U)  The FBI identified the location of the withholdings by listing the name of the document and the applicable page number.  The page number can be found in the bottom center of each page.

-8-



~~SECRET//NOFORN~~

SECRET//NOFORN

(17)   (S//NF)

SECRET//NOFORN

SECRET//NOFORN

## EXEMPTION (b)(1)
## CLASSIFIED INFORMATION

(18)     (U)  5 U.S.C. § 552 (b)(1) exempts from disclosure records that are:

    (A)     specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and

    (B)     are in fact properly classified pursuant to such Executive Order.

(19)     (U)  Before I consider an Exemption 1 claim for withholding agency records, I determine whether the information in those records is information that satisfies the requirements of E.O. 13526, the Executive Order that governs the classification and protection of information that affects the national security,[4] and whether the information complies with the various substantive and procedural criteria of the Executive Order. E.O. 13526, signed by President Barack Obama on December 29, 2009, is the Executive Order that currently applies to the protection of national security information. I am bound by the requirements of E.O. 13526, when making classification determinations.

(20)     (U)  For information to be properly classified, and thus, properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526, §1.1 (a):

    (1)     an original classification authority is classifying the information;

    (2)     the information is owned by, produced by or for, or is under the control of the United States Government;

    (3)     the information falls within one or more of the categories of information

---

[4] (U) Section 6.1 (cc) of E.O. 13526, defines "National Security" as "the national defense of foreign relations of the United States."

SECRET//NOFORN



SECRET//NOFORN

listed in §1.4 of this order; and

(4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(21)     (U) As I will explain in further detail below, in my role as an original classification authority, I have determined the information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified and requires a classification marking at the "Secret" level because "the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security." See E.O. 13526, §1.2(a)(2). In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 13526 must be followed before information can be considered to be properly classified, such as proper identification and marking of documents. I made certain that all procedural requirements of E.O. 13526 were followed in order to ensure the information was properly classified. I made certain that:

(1)     each document was marked as required and stamped with the proper classification designation;

(2)     each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 13526, §1.5 (b), and which portions are unclassified;

(3)     the prohibitions and limitations on classification specified in E.O. 13526, §1.7, were adhered to;

(4)     the declassification policies set forth in E.O. 13526, §§3.1 and 3.3 were followed; and

(5)     any reasonably segregable portions of these classified documents that did



SECRET//NOFORN

SECRET//NOFORN

not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

### Findings of Declarant

(22)    (U) With the above requirements in mind, I personally and independently examined the information withheld from plaintiff pursuant to FOIA Exemption 1. I determined this classified information is owned by, was produced by or for, and/or is under the control of the U.S. Government. I further determined the classified information continues to warrant classification at the "Secret" level and is exempt from disclosure pursuant to E.O. 13526, §1.4, categories (c) intelligence activities (including covert action), intelligence sources and methods, or cryptology.

### E.O. 13526, § 1.4(c) – Intelligence Activities, Sources and Methods

(23)    (U) E.O. 13526, § 1.4(c), exempts intelligence activities (including covert action), intelligence sources or methods, or cryptology from disclosure. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization who has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method -- and information generated by it -- is needed by U. S. Intelligence Community ("IC") to carry out its foreign intelligence and counterintelligence missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved. As described in detail below, the withheld information is protected by Exemption 1

-12-

SECRET//NOFORN

SECRET//NOFORN

because it describes intelligence activities, sources, and methods utilized by the FBI in gathering intelligence information, and confidentiality must be maintained to ensure their usefulness and effectiveness. Thus, the withheld information falls squarely within the meaning of §1.4(c). Additionally, the FBI is also asserting FOIA Exemption (b)(3) [50 U.S.C. § 3024 (i)(1)] (National Security Act of 1947) in conjunction with (b)(1) and is, at times, claiming (b)(7)(E).

(24)    (U) In this case, the FBI has protected information under FOIA Exemption (b)(1) because it is classified and the release of such information would reveal actual intelligence activities and methods used by the FBI against specific targets, who are the subject of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets. The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.

(25)    (S//NF)



SECRET//NOFORN

SECRET//NOFORN

(26)     (U) Additionally, the classified information withheld from these documents contain detailed intelligence activity information gathered or compiled by the FBI about a specific individual or organization of national security interest, the disclosure of which could reasonably be expected to cause serious damage or exceptionally grave damage to our national security. The information would reveal actual intelligence activities or methods utilized by the FBI against a target or disclose the full intelligence-gathering capabilities of that method. This investigative activity and method is used by the FBI and IC in carrying out its foreign intelligence and counterintelligence missions, and the confidentiality of this activity and method is necessary in preserving its effectiveness. This information is properly classified at the "Secret" level, withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1, cited in conjunction with Exemption b3 [50 U.S.C. § 3024(i)(1) (National Security Act)] and, at times, with Exemption 7(E). The FBI protected the following categories of information specific to intelligence activities, sources, and methods:  (a) detailed intelligence activity information compiled regarding a specific individual or organization of national security

-14-

SECRET//NOFORN

SECRET//NOFORN

interest; (b) information that would reveal specific foreign counterintelligence investigations; (c)

standard terminology and phraseology associated with national security investigations; and (d)

acronyms which identify specific intelligence activities or methods.  Below is a more detailed

discussion of each category.

### A. Detailed Intelligence Activities

(27)    (U)  The classified information withheld from these documents contain detailed

intelligence activity information gathered or compiled by the FBI on specific individuals or

organizations of national security interest.  The disclosure of this information could reasonably

be expected to cause serious or exceptionally grave damage to the national security, as it would:

(a) reveal actual intelligence activity or method utilized by the FBI against a specific target; (b)

disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of

the intelligence source penetration of a specific target during a specific time period.  Thus, the

information is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, §

1.4(c), and is exempt from disclosure pursuant to Exemption 1.[5]

### B. Foreign Counterintelligence Investigations

(28)    (U)  The classified information withheld on certain pages identifies targets of

current, past or prospective FBI foreign counterintelligence investigations.  The disclosure of this

information could reasonably be expected to cause serious or exceptionally grave damage to the

national security as it would reveal actual intelligence activity or method used by the FBI and

---

[5] (U) Exemption (b)(1) – Detailed Intelligence Activities - has been cited in conjunction with (b)(3) and, at times, in conjunction with (b)(7)(E) on the following pages:  Document 2a on pages 20-1, 28, 31, 35-6; Document 2c at Exhibit D; Document 2d at page 10; Document 3a at pages 19-20, 26-31, 33, 40-7, 67; Document 3b at pages 13-15, 20-1, 23-6; Document 3c at page 10-11; Document 3d at page 15-16; Document 3e at pages 5-6, 11-3; and Document 3f at page 14.

-15-


SECRET//NOFORN

SECRET//NOFORN

directed at a specific target. The release of this information could permit hostile governments or terrorist groups to appraise the scope, focus, location, target, and capabilities of the FBI's intelligence-gathering methods and activities, and allow these hostile agents to devise countermeasures to circumvent these intelligence activities or method rending them useless. This would severely disrupt the FBI's intelligence-gathering capabilities. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c), and exempt from disclosure pursuant to Exemption 1.[6]

### C. Terminology/Phraseology Used in National Security Investigations

(29)    (U) The classified information withheld on various pages contain terminology or phraseology that appear in FBI national security investigations. Disclosure of this information could reveal the intelligence methods or activities used in national security investigations as well as disclose the scope and depth of the FBI's efforts in a particular investigation or the amount of resources the FBI expends on a particular matter. This allows targets to determine how much information has been learned and what additional steps may be expected. If the information described by this phraseology is shallow, yet the subject is heavily involved in matters under investigation, it alerts the subject to the fact that his activities may continue without fear of detection. Conversely, if the information is substantial, it will prompt the subject to alter his

---

[6] (U) Exemption (b)(1) – Foreign Counterintelligence Investigations – has been cited in conjunction with (b)(3) and, at times, in conjunction with Exemption 7(E) on the following pages:  Document 2a on pages 23, 28, and 29; Document 2d on page 10; Document 3a on pages 9-10, 19-20, 22, 26, 28-31, 33, 40-8, and 67; Document 3b on pages 12-14, 25-6; Document 3c on pages 10-1; Document 3d on page 15; Document 3e on pages 5-6, 11-3; and Document 3f on page 14.



SECRET//NOFORN

course of conduct. This information is properly classified at the "Secret" level and withheld

pursuant to E.O. 13526, § 1.4(c) and exempt from disclosure pursuant to Exemption 1.[7]

### D. Acronyms

(30)   (U) The classified information withheld on this page contains an acronym that

identifies a specific intelligence method used by the FBI in its intelligence-gathering activities.

The disclosure of this acronym could permit hostile analysts to ascertain the specific nature of

the FBI's investigations as well as determine the employed method. This information is properly

classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c) and exempt from

disclosure pursuant to Exemption 1.[8]

(31)   (U) It is my determination that disclosure of specific information describing the

intelligence activities, sources, or methods that have been or are being used within these

documents, and are still used by the FBI in gathering intelligence information in other cases, and

could reasonably be expected to cause serious or exceptionally grave damage to the national

security for the following reasons: (1) disclosure would allow hostile entities to discover the

current intelligence-gathering activities and methods used by the FBI; (2) disclosure would

reveal current specific targets of the FBI's national security investigations; and (3) disclosure

would reveal the determination of the criteria used and priorities assigned to current intelligence

or counterintelligence investigations. With the aid of this detailed information, hostile entities

and individuals could develop countermeasures that would severely disrupt the FBI's

---

[7] (U) Exemption (b)(1) –Terminology/Phraseology in National Security Investigations - has been cited in conjunction with (b)(3) and, at times, in conjunction with (b)(7)(E) on the following pages:  Document 3a on pages 29 and 42; and Document 3b on pages 13 and 25.

[8] (U) Exemption (b)(1) –Acronyms - has been cited in conjunction with (b)(3) and, at times, in conjunction with (b)(7)(E) on page 10 of Document 2d.


SECRET//NOFORN

SECRET//NOFORN

intelligence-gathering capabilities. This major disruption could result in severe or exceptionally grave damage to the FBI's efforts in detecting and apprehending violators of the United States' national security and criminal laws. Thus, the information was properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c). Thus, the information is exempt from disclosure pursuant to Exemption 1.[9]

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(32)    (U)  5 U.S.C. § 552 (b)(3) exempts from disclosure information that is specifically protected by statute...provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph. The FBI asserted Exemption (b)(3) in conjunction with Exemption (b)(1) and, at times, in connection with (b)(7)(E) to protect the intelligence sources and methods described above. The basis for the FBI's invocation of Exemption (b)(3) is detailed below.

### (b)(3)-1:    Information Specifically Exempted by 50 U.S.C. § 3024 (i)(1) (National Security Act of 1947)

(33)    (U)  The FBI has asserted Exemption (b)(3)-1 in conjunction with Exemption (b)(1) and, at times, with (b)(7)(E) to protect information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism

---

[9] (U) Exemption (b)(1) has been cited in conjunction with (b)(3) and, at times, in conjunction with (b)(7)(E) on the following pages: Document 2a on pages 20-1, 23, 28-9, 31, and 35-6; Document 2c at Exhibit D; Document 2d on page 10; Document 3a on pages 9-10, 19-20, 22, 26-31, 33, 40-7, and 67; Document 3b on pages 9, 13-15, 20-1, and 23-6; Document 3c on pages 10-1; Document 3d on pages 15-6; Document 3e on pages 5-6, and 11-13; and Document 3f on pages 14-5.

SECRET//NOFORN

SECRET//NOFORN

Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024 (i)(1), which provides that the Director of

National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources

and methods."[10] As relevant to U.S.C. § 552 (b)(3)(B), the National Security Act of 1947 was

enacted before the date of enactment of the OPEN FOIA Act of 2009. On its face, this federal

statute leaves no discretion to the DNI about withholding from the public information about

intelligence sources and methods. Thus, the protection afforded to intelligence sources and

methods by 50 U.S.C. § 3024(i)(1) is absolute. See CIA v. Sims, 471 U.S. 159 (1985).

(34)     (U) To fulfill its obligation of protecting intelligence sources and methods, the

DNI is authorized to establish and implement guidelines for the IC for the classification of

information under applicable laws, Executive Orders, or other Presidential Directives, and for

access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(i)(1). The FBI is one of 17

member agencies comprising the IC, and as such must protect intelligence sources and methods.

(35)     (U) As described above, Congress enacted the NSA, as amended by the IRTPA,

to protect the IC's sources and methods of gathering intelligence. Disclosure of such

information presents the potential for individuals to develop and implement countermeasures,

which would result in the loss of significant intelligence information, relied upon by national

policymakers and the IC. Given that Congress specifically prohibited the disclosure of

information pertaining to intelligence sources and methods used by the IC as a whole, I have

determined that the FBI's intelligence sources and methods would be revealed if any of the

withheld information is disclosed to plaintiff. Thus, the FBI is prohibited from disclosing

---

[10] (U) Section 1024(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result
of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).


SECRET//NOFORN

SECRET//NOFORN

information falling under 50 U.S.C. § 3024(i)(1). Accordingly, this information was properly withheld pursuant to Exemption 3 and is legally prohibited under 50 U.S.C. § 3024(i)(1).[11]

## EXEMPTION (b)(7) THRESHOLD

(36)     (U)  Exemption (b)(7) of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the six sets of harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552 (b)(7). The enumerated harm that could reasonably be expected to result is - the disclosed information could reasonably be expected to interfere with and reveal law enforcement techniques and procedures which, if made public, could be used to circumvent the law.

(37)     (U)  Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to its national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive documents

---

[11] (U) Exemption (b)(3)-1 has been cited in conjunction with (b)(1) and, at times, in conjunction with (b)(7)(E) on the following pages: Document 2a on pages 20-1, 23, 28-9, 31, and 35-6; Document 2c at Exhibit D; Document 2d on page 10; Document 3a on pages 9-10, 19-20, 22, 26-31, 33, 40-7, and 67; Document 3b on pages 9, 13-15, 20-1, and 23-6; Document 3c on pages 10-1; Document 3d on pages 15-6; Document 3e on pages 5-6, and 11-13; and Document 3f on pages 14-5.

SECRET//NOFORN

SECRET//NOFORN

herein are FISA related and pertain to the government's ability, under FISC approval, to conduct

electronic surveillance on electronic communications of foreign targets with the purpose of

investigating and gathering intelligence information with the goal of apprehending and

prosecuting subjects who have committed acts of terrorism against the United States. As such,

the documents relate to the enforcement of federal laws and such activity is within the law

enforcement duty of the FBI. Accordingly, the responsive documents were generated pursuant

to the law enforcement duties of the FBI as articulated above. The FBI is responsible for

detecting and investigating violations of Federal criminal laws, international terrorism, and

threats to national security. *See* FBI's Domestic Investigations and Operations Guide, Sections

2.2, 2.3, and 2.4 (October 16, 2013). All documents responsive to plaintiff's request and referred

to the FBI pertain to national security investigations and specify the methods used in gathering

intelligence information through FISA-related documents submitted to and issued by the FISC.

The documents relate to matters before the FISC, and provide details about various FBI

investigations as well as the investigative techniques and procedures used in national security

investigations of persons who are suspected or known terrorists. These documents were

compiled for law enforcement purposes; squarely within the law enforcement duties of the FBI;

and therefore, readily meet the threshold requirement of Exemption (b)(7). The remaining

inquiry concerns whether the disclosure of such documents could reasonably be expected to

interfere with pending law enforcement proceedings and/or could reasonably be expected to

unveil investigative techniques and procedures utilized by the FBI.



SECRET//NOFORN

~~SECRET//NOFORN~~

### EXEMPTION (b)(7)(A)
### PENDING OR PROSPECTIVE LAW ENFORCEMENT PROCEEDING

(38)   (U)  Exemption 7(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).[12]

(39)   (S//NF)



(40)   (U)  The FBI reviewed the referred documents and segregated exempt material from non-exempt material, thus with regard to Exemption 7A, only information with a nexus to harming the pending investigations was withheld.  If the withheld information was released and became part of the public domain, it could alert the very individuals or terrorist organizations under investigation.  This would allow targeted individuals and terrorist organizations to critically analyze the information within these documents, providing them with the unique

---

[12] (U) The records in this case satisfy Exemption 7's threshold requirement, as established in ¶¶ 35-36, *supra*.





**SECRET//NOFORN**

advantage of knowing details about the investigation to use to their advantage. As a result, the

following potential harms flow from the release of information concerning these pending

investigations:

(a) (S//NF)



(b) (S//NF)

(c) (U) the identification of other third parties who may also be under
investigation;

(d) (U) the revelation of sensitive law enforcement techniques used in these and
other national security investigations;

(e) (U) the geographic location(s), investigative techniques, and systems used
revealing the FBI's focus in national security investigations.

(41) (U) The FBI makes every effort to segregate information in its investigative

records that will not interfere with pending law enforcement proceedings; therefore, in this case,

the FBI concluded that some information in these documents could be released without

compromising the FBI's pending national security investigations.[13] Accordingly, the FBI

properly withheld this information pursuant to FOIA Exemption 7(A).[14]

---

[13] (U) In addition, other applicable exemptions that apply to this information include Exemptions 1, 3, and 7(E), and have been addressed within this declaration.

[14] (U) Exemption (b)(7)(A) has been cited in conjunction with (b)(1) and (b)(3), and, at times, in conjunction with (b)(7)(E) on the following pages:  Document 3a on pages 9-10, 19, 22, 26, 28-30, 33, 41-2, and 45-7; Document 3b on pages 12-4, 20, 22, and 23-7; and Document 3e on page 11.



**SECRET//NOFORN**

SECRET//NOFORN

### EXEMPTION (b)(7)(E)
### INVESTIGATIVE TECHNIQUES AND PROCEDURES

(42)    (U)  5 U.S.C. § 552 (b)(7)(E) provides protection for:

law enforcement records which would disclose techniques and procedures
for law enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if such
disclosure could reasonably be expected to risk circumvention of the law.

(43)    (S//NF)



SECRET//NOFORN



SECRET//NOFORN

(44)    (U) A description of the coded categories for the information protected under (b)(7)(E) is outlined below. The coded categories will explain the basis for applying this exemption to certain information. To describe the protected information in greater detail would identify and highlight the sensitive information the FBI seeks to protect. The revelation of such details could enable the targets of these techniques to develop countermeasures to avoid detection and circumvent the FBI's law enforcement efforts.[15]

(45)    (U) The FBI's reasoning for protecting such information cannot be examined in a vacuum; it must be analyzed within the larger context of our country's current national security climate and the FBI mission to protect the nation from terrorist organizations and foreign nations who seek harm to United States persons and interests. Thus, if the investigative techniques or procedures below are made public, then those individuals, terrorist organizations, and foreign nations can educate themselves on FBI's information gathering tactics, thereby enhancing their ability to develop countermeasures and avoid detection.

(46)    (U) The FBI has provided a description of the information protected under Exemption (b)(7)(E) and its corresponding coded category below. The FBI provides as much information on the public record as possible without risking the release of the very sensitive FBI

---

[15] (U) Exemption (b)(7)(E) is oftentimes cited in conjunction with FOIA Exemptions (b)(1) and (b)(3).

SECRET//NOFORN

SECRET//NOFORN

techniques or procedures it seeks to protect.

**(b)(7)(E)-1:**   **Investigative Techniques and Procedures**

(47)   (S//NF)



SECRET//NOFORN

SECRET//NOFORN

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

(48)    (U)  To describe the investigative technique in further detail on the public record

would highlight the very information the FBI seeks to protect pursuant to this exemption.

Revealing details about information-gathering techniques commonly used in national security

investigations, and the circumstances under which they are used, would enable the foreign

targets of those techniques to avoid detection or develop countermeasures to circumvent the

FBI's ability to effectively use such critical law enforcement techniques in current and future

national security investigations, thereby enabling circumvention of the law.  Accordingly, the

FBI properly withheld this information pursuant to FOIA Exemption 7(E).[18]

### (b)(7)(E)-2:    Database Information and/or Printouts

(49)    (U)  Exemption (b)(7) (E) has been asserted, at times, in conjunction with (b)(1)

and (b)(3) to protect database information and search results located through non-public

databases and used for official law enforcement purposes by the FBI.  These non-public

---

[16] (S//NF) ██████████████████████████████████████

[17] (S//NF) ██████████████████████████████████████
████████████████████████████████████████████████

[18] (U) Exemption (b)(7)(E)-1 has been asserted, at times in conjunction with (b)(1) and (b)(3), on the following
pages:  Document 2c at Exhibit D; Document 2d on page 11; Document 3a on pages 9, 19-20, 22, 26-31, 33, 41-7,
and 67; Document 3b on pages 9, 13-5, 20-1, and 23-6; Document 3d on page 16; and Document 3e on pages 5-6,
and 11-3.



SECRET//NOFORN

~~SECRET//NOFORN~~

databases serve as repositories for counterterrorism and investigative data. They are essentially a "one-stop" shop that allows law enforcement to query information and develop investigative leads from a variety of source data using state-of-the-art analytical tools. FBI personnel as well as task force members from local, state and other federal agencies have access to these databases. Disclosure of specific information on the databases used in national security investigations and the information compiled within these databases could enable terrorist to employ countermeasures to avoid detection, thus jeopardizing the FBI's investigative mission. Disclosure of this information would impede the FBI's investigative effectiveness and potentially aid in circumvention of the techniques if disclosed; therefore, the FBI properly withheld this information pursuant to Exemption 7(E).[19]

### (b)(7)(E)-3:    Sensitive Law Enforcement Techniques Utilized to Conduct National Security Investigations

(50)    (S//NF)



---

[19] (U) Exemption (b)(7)(E)-2 has been asserted, at times in conjunction with (b)(1) and (b)(3), on the following pages: Document 2a on pages 21.

~~SECRET//NOFORN~~

SECRET//NOFORN



### (b)(7)(E)-4:   Collection/Analysis of Information

(51)    (U)  Exemption (b)(7)(E) has been asserted to protect methods the FBI uses to

collect and analyze information obtained through Section 702 of the FISA and surveillance of

---

20 (U) Exemption (b)(7)(E)-3 has been asserted, at times, in conjunction with (b)(1) and (b)(3) on the following pages:  Document 2a on pages 20-1, 23, 28-9, 31, and 35-6; Document 2c at Exhibit D; Document 2d on page 10; Document 3a on pages 9, 19-20, 22 26-31, 33, 41-7 and 67; Document 3b on pages 9, 13-5, 20-1, and 23-6; Document 3d on page 16, and Document 3e on pages 5-6, and 11-3.

SECRET//NOFORN

SECRET//NOFORN

electronic communications in connection with its national security investigations. The release of this information would disclose the identity of methods used in collecting and analyzing information, including how and from where the FBI collects information, and the methodologies employed to analyze it. Such disclosures would enable individuals, terrorist organizations, and foreign powers to circumvent similar and currently used techniques. The relative utility of these techniques could be diminished if information about the actual techniques was released. In turn, this would facilitate the accumulation of information by terrorist organizations and foreign powers regarding the circumstances under which specific techniques were used or requested, and the usefulness of the information obtained. Release of this information would thus afford terrorists and foreign powers the opportunity to educate themselves on techniques employed by the FBI in collecting and analyzing information, and allow them to adopt countermeasures to circumvent their effectiveness.

(52)    (U) Similar to the reasoning articulated in ¶¶ 39-40, *supra.*, the FBI's use of Section 702 to collect electronic communications is a known public fact; however, the precise methods the FBI uses to collect and analyze the information is not well known. Each of the documents, especially documents 2a, 3a, and 3b, contain sensitive information about this investigative method. The method is detailed throughout the documents in varying degrees of specificity. Releasing information on this specific method and its use would, in essence, highlight the types of activities, facts, or occurrences that are of particular interest to the FBI in its national security investigations. Publicly disclosing this investigative method, the analysis of information gleaned from this method, or any other sort of details regarding it would inform these individuals of the kinds of information the FBI is interested in capturing and would afford


SECRET//NOFORN

~~SECRET//NOFORN~~

them the opportunity to employ counter-measures to circumvent detection.  Accordingly, the FBI

properly withheld this information pursuant to FOIA Exemption 7(E).[21]

### (b)(7)(E)-5:   Investigative Focus of Specific Investigation

(53)   (S//NF)



---

21 (U) Exemption (b)(7)(E)-4 has been asserted, at times, in conjunction with (b)(1) and (b)(3) on the following pages:  Document 2a on pages 20-4, 28-9, 31, and 35-6, Document 2c on Exhibit D; Document 2d on page 11; Document 3a on pages 9, 19-20, 22, 26, 28-31, 33, 41-2, 45-7 and 67; Document 3b on pages 13-4, 20-1, and 23-6; Document 3e on pages 5-6, and 11-3.

22 (U) Exemption (b)(7)(E)-5 has been asserted, at times, in conjunction with (b)(1) and (b)(3) on the following



~~SECRET//NOFORN~~

SECRET//NOFORN

### (b)(7)(E)-6:   Information Concerning the Installation, Locations, Monitoring, and Types of Techniques Utilized in Surveillance

(54)   (U) Exemption (b)(7)(E) has been asserted to protect information concerning the locations and types of monitoring used by the FBI in national security investigations. The FBI has utilized various types electronic surveillance in an effort to obtain investigative intelligence relevant to specific national security investigations. The law enforcement techniques used to conduct these surveillances are the same or similar to those utilized by the FBI in other national security investigations. Certainly, it is publicly known the FBI and other law enforcement agencies engage in electronic surveillance; however, public disclosure of detail about the types of surveillance employed, the methods, the analysis, and the targets would allow individuals and terrorist organizations to develop and utilize countermeasures to defeat and avoid surveillance, thus undermining the techniques utility. In this case, documents 3a and 3b detail the varying methods used in conducting surveillance via electronic communications. *See* ¶ 47 and fn. 15-16, *supra*. Accordingly, the disclosure of such information could reasonably be expected to reveal vital investigative techniques employed by the FBI and would afford terrorists the opportunity to develop techniques to avoid detection. Thus, the FBI properly protected this information from disclosure pursuant to FOIA Exemption (b)(7)(E).[23]

### (b)(7)(E)-7:   Sensitive Docket Numbers

[Omitted] – Not challenged by Plaintiff

---

pages: Document 3a on pages 9, 19-20, 22, 26, 28-31, 33, 41-2, 45-7, and 67; Document 3b on pages 13-4, 20-1, and 23-6; and Document 3e on pages 11-3.

[23] (U) Exemption (b)(7)(E)-6 has been asserted, at times, in conjunction with (b)(1) and (b)(3) on the following pages: Document 3e on pages 11-3.



SECRET//NOFORN

SECRET//NOFORN

## SEGREGABILITY

(55)   (U) All responsive, non-exempt documents or portions of records referred to the FBI by NSD have been provided to plaintiff. During the processing of these documents, each page was individually examined to identify all FBI equities as well as the non-exempt portions of information to determine whether it could be reasonably segregated from exempt information. This way, as much information as possible could be provided to the plaintiff without releasing material that could jeopardize pending or prospective national security investigations. While these FISA-related documents could easily be characterized as consisting of information that would disclose investigative techniques and procedures, and thus, would be eligible for protection under (b)(7)(E) in its entirety, the FBI endeavored to release as much segregable information as possible to the plaintiff. Even though some information, if examined in isolation, would appear benign or not sensitive, when read in conjunction with other responsive documents, it reveals sensitive information about FBI techniques and procedures used in national security investigations. The otherwise innocuous portions of information could, when read or viewed within the context of other available documents and information, reveal highly sensitive information to sophisticated adversaries. It is important for the FBI to review each document in connection with the balance of documents to determine whether the information would tend to reveal classified intelligence sources, methods, and activities. Even something as seemingly innocuous as a case citation or statutory provision, when read in connection with a document containing significant legal analysis of a Section 702 FISA and the FBI's use of electronic surveillance through electronic communications, could reveal important details about the investigative techniques and could risk disclosure of the existence, nature, or scope of an

SECRET//NOFORN

SECRET//NOFORN

underlying intelligence method and technique. Additionally, in applying a mosaic analysis, the information, if released, could be pieced together revealing highly sensitive information to our adversaries as well as exposing important information about these techniques. This revelation would render the technique ineffective and afford our adversaries the opportunity to change their pattern of behavior, develop countermeasures, and avoid detection by the FBI rendering these investigative techniques useless.

(56)    (U) All segregable information has been provided to the plaintiff. The FBI only withheld information that was classified, protected by statute, or information, if released, would trigger reasonably foreseeable harm to a pending law enforcement proceeding or reveal investigative techniques and procedures used by the FBI.

## CONCLUSION

(57)    (U) The FBI has reviewed, processed, and released all non-exempt information from documents provided by NSD. All exempt information involves sensitive, and, at times, Secret intelligence sources and methods, pending law enforcement proceedings, and investigative techniques and procedures used by the FBI in national security investigations. This exempt information has been protected under FOIA Exemptions 1, 3, 7(A), and 7(E). Accordingly, all reasonably segregable, non-exempt information has been released to plaintiff and the FBI's justification for withholding such information has been detailed in this declaration.

SECRET//NOFORN

~~SECRET//NOFORN~~

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this 30th day of April 2015.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

~~SECRET//NOFORN~~