**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
**ELECTRONIC FRONTIER FOUNDATION**,      )
                                                          )
           Plaintiff,                             )
                                                          )
v.                                                       )          C.A. No. 14-760-RMC
                                                          )
**DEPARTMENT OF JUSTICE**,                      )
                                                          )
           Defendant.                           )
_____)

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Electronic Frontier Foundation ("EFF") cross-moves for partial summary judgment with respect to defendant's continued withholding, in full, of the opinion referenced in footnote 15 of Judge Bates' October 3, 2011 opinion of the Foreign Intelligence Surveillance Court. This record has been unlawfully withheld in its entirety from defendant's response to EFF's Freedom of Information Act request.

EFF respectfully refers the Court to the accompanying memorandum of points and authorities in support of this cross-motion.

Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
5335 Wisconsin Ave. N.W., Ste. 640
Washington, DC 20015
(202) 246-6180

MARK RUMOLD
(admitted in California)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ELECTRONIC FRONTIER FOUNDATION,

               Plaintiff,

v.

DEPARTMENT OF JUSTICE,

               Defendant.

_____

C.A. 14-760-RMC

## MEMORANDUM IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Since June 2013, the American public has engaged in one of the most far-ranging debates on national security surveillance in this country's history. Press reports on the intelligence community's surveillance activities have raised serious questions about the scope, propriety, and legality of many of its practices. Those reports, and the ensuing public outcry, have spurred Congressional and public debate on surveillance reform. Documents released through Freedom of Information Act ("FOIA") litigation — including significant opinions of the Foreign Intelligence Surveillance Court ("FISC"), like those sought and disclosed through this case — have played a critical role in this debate.

Despite the centrality of FISC opinions to public understanding and the ongoing debate on surveillance reform, the Department of Justice ("DOJ") continues to withhold at least one significant opinion of the FISC in its entirety. That withholding is now the sole focus of this case.

1

The opinion ("the Section 1809 Opinion" or the "Opinion"), described in more depth below, assessed the government's proposed use of data acquired through surveillance that exceeded the NSA's statutory authority. Given the topic — government surveillance that apparently went beyond the Foreign Intelligence Surveillance Act's legal strictures, and the government's attempted use of that data — the public interest in disclosure of the Opinion is undeniable.

And yet DOJ has insisted that no portion of the Opinion can be disclosed — even in part. The agency offers no compelling reason for its conclusion. While plaintiff acknowledges that *some* of the Opinion's contents may, ultimately, be justifiably withheld, that concession does not validate the withholding, in full, of a significant opinion of an Article III court, as the agency attempts to do here. Indeed, given the topic of the Opinion, its withholding appears more calculated to shielding the government from embarrassment and preventing further public scrutiny of its surveillance practices, than to protecting legitimate national security interests.

For the reasons that follow, plaintiff Electronic Frontier Foundation ("EFF") respectfully urges the Court to require the production of the withheld Opinion for the Court's *in camera* inspection and to order the disclosure of any and all improperly withheld information.

## I.     Factual and Procedural Background.

### A.      Plaintiff's FOIA Requests and Defendant's Responses.

In furtherance of its ongoing effort to inform the public about the legal underpinnings of the intelligence community's surveillance practices, EFF submitted four separate FOIA requests seeking disclosure of multiple, still-secret significant opinions of

the FISC and related documents. *See* Compl., ¶¶ 15-18 (ECF No. 1). EFF requested

expedited processing for each of the requests, which the agency granted. *See id.* ¶¶ 21-25.

After months passed without production of a single document, EFF filed this action on

May 1, 2014.

Three months after filing suit — and after the agency failed to produce a single

responsive document; after the agency refused to commit to a prompt schedule for

production; and with Congressional action on surveillance reform pending — EFF filed a

Motion for a Preliminary Injunction, seeking the immediate production of responsive

documents. *See* Motion for Preliminary Injunction (ECF No. 8). Ultimately, EFF

withdrew its motion, asking the Court to instead establish a firm schedule for agency

production of responsive documents. On September 5, 2014, the Court set a rolling

production schedule for documents responsive to EFF's requests. *See* Minute Order, Sept.

5, 2014.

From September 2014 to March 2015, DOJ ultimately produced redacted versions

of a number of significant opinions of the FISC that were responsive to EFF's request

and that had previously been withheld in full from the public. *See* Defendant's

Memorandum of Points and Authorities in Support of the Department of Justice's Motion

for Summary Judgment ("Def. Mem.") at 2-7. The released opinions, in turn, provided

the public with critical information about many of the FISC's legal interpretations,

improving public understanding of applicable surveillance laws and generating attention

from national media outlets. *See*, *e.g.*, Charlie Savage, *Documents Shed New Light on*

*Legal Wrangling Over Spying in the U.S.*, New York Times (Dec. 12, 2014);[1] Ellen

Nakashima, *Records Reveal Why Court Shut Down Bush-Era Spy Program*,

Washington Post (Dec. 13, 2014);[2] Charlie Savage, *Government Declassifies 2007*

*Surveillance Court Rulings,* (Jan. 26 2015).[3]

> **B.    Information that Remains at Issue in this Litigation and the Parties'**
> **Cross- Motions for Summary Judgment.**

In an effort to narrow and focus the scope of further litigation, and following

discussion between the parties, EFF agreed to withdraw its challenge to certain specific

categories of information withheld by the agency. *See* Def. Mem. at 6 (describing

agreement not to challenge "docket numbers, certification numbers and quantities,

quantities of applications, withholdings pursuant to (b)(6), or names or descriptions of

surveillance targets"). EFF further agreed to exclude five responsive documents from its

challenges entirely. *See* Def. Mem. at 6.

Following those discussions, Defendant moved for summary judgment on May 1,

2015. After review of DOJ's motion, and in order to further reduce the burden on the

Court and the parties, EFF has chosen to once again substantially narrow the remaining

issues in dispute.[4] Accordingly, EFF continues to challenge the withholding of only a

---

[1] *Available at* http://www.nytimes.com/2014/12/13/us/politics/documents-shed-new-light-on-legal-wrangling-over-spying-in-us-.html

[2] *Available at available at* http://www.washingtonpost.com/world/national-security/records-reveal-why-court-shut-down-bush-era-spy-program/2014/12/13/ef3e04b8-8301-11e4-81fd-8c4814dfa9d7_story.html.

[3] *Available at* http://www.nytimes.com/interactive/2015/01/27/us/27-fisc-foia-documents.html.

[4] It bears emphasizing that EFF's decision to withdraw its challenges to many of the government's withholdings does not represent agreement or an acknowledgment of the legitimacy of those withholdings. Instead, the decision is a pragmatic one intended to focus the parties' briefing and to help narrow the issues to be decided for the Court.

single document: the Section 1809 Opinion.[5]

For the reasons set forth below, EFF now cross-moves for partial summary judgment.

## ARGUMENT

### I.      The FOIA Establishes a Presumption of Disclosure and DOJ Bears the Burden of Demonstrating that Withheld Information is Clearly Exempt.

FOIA safeguards the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citations omitted). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

The statute requires disclosure of agency records when requested unless the records fall within one of the Act's nine narrow exemptions. *See* 5 U.S.C. § 552(b)(1) - (9). The exemptions "have been consistently given a narrow compass," and information that "do[es] not fall within one of the exemptions [is] improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976).

---

[5] EFF also withdraws its challenge to two, additional categories of information: information concerning the "threat posed by adversaries" and the "identities of communications service providers." *See* Declaration of David J. Sherman ("Sherman Decl."), ¶¶ 9-11, 37-44. Thus, even if this information appears within the Section 1809 Opinion, EFF does not challenge its withholding.

Disputes involving the propriety of agency withholdings are commonly resolved through summary judgment in FOIA cases. *Harrison v. Exec. Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). "A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law." *Goodrich v. Teets*, 510 F. Supp. 2d 130, 136-37 (D.D.C. 2007) (citing Fed. R. Civ. P. 56(c)). In FOIA cases, a court reviews the government's decision to withhold information *de novo*, and the government bears the burden of proving that a particular exemption applies. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. Even national security claims of the type invoked here do not alter a court's "independent responsibility" to undertake a thorough *de novo* evaluation of the government's exemption claims. *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987).

To satisfy its burden, the agency "must provide a relatively detailed justification [for its withholding decisions], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (internal citations omitted).[6] "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'"

---

[6] In *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit established the procedural requirements that "an agency seeking to avoid disclosure" must follow in order to carry its burden in a FOIA case. *Id.* at 828. These procedural obligations are typically satisfied by the submission of an index describing each withheld record (a "*Vaughn* index") and an affidavit from an agency official, further describing the agency's rationale for withholding the record. *See King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).

*Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). Thus, when

claiming one of FOIA's exemptions, the agency bears the burden of demonstrating to a

reviewing court that withheld information is "*clearly* exempt." *Birch v. USPS,* 803 F.2d

1206, 1209 (D.C. Cir. 1986) (emphasis added) (citing *Vaughn*, 484 F.2d at 823).

## II.     The Agency Has Improperly Withheld the Section 1809 Opinion in Full.

In light of FOIA's broad mandate of disclosure, DOJ offers no plausible

justification for its continued withholding, in full, of the Section 1809 Opinion.

Significantly, DOJ has already substantially disclosed the subject of the Section

1809 Opinion through the release of an October 3, 2011 FISC opinion written by Judge

John D. Bates. [*Caption Redacted*], 2011 WL 10945618 (FISC Oct. 3, 2011) (the

"October 3 Opinion"). In the October 3 Opinion, Judge Bates observed that the

government's disclosures concerning its "upstream surveillance"[7] implicated the criminal

prohibitions of FISA, 50 U.S.C. § 1809. Specifically, Judge Bates noted:

> The government's revelations regarding the scope of NSA's upstream
> collection implicate 50 U.S.C. § 1809(a), which makes it a crime (1) to
> "engage[ ] in electronic surveillance under color of law except as
> authorized" by statute or (2) to "disclose[ ] or use [ ] information obtained
> under color of law by electronic surveillance, knowing or having reason to
> know that the information was obtained through electronic surveillance
> not authorized" by statute. *See* [*Caption Redacted*] *(concluding that
> Section 1809(a)(2) precluded the Court from approving the government's
> proposed use of, among other things, certain data acquired by NSA
> without statutory authority through its "upstream collection").* The Court
> will address Section 1809(a) and related issues in a separate order.

October 3 Opinion, 2011 WL 10945618, *6 n. 15 (emphasis added).

---

[7] As this Court is likely aware, the term "'upstream collection' refers to the acquisition of
Internet communications as they transit the 'internet backbone' facilities of" American
internet service providers, like AT&T and Verizon. [*Caption Redacted*] 2012 WL
9189263, *1 (FISC Aug. 24, 2012).

Although the caption of the Opinion remains redacted, as the italicized portion of the quote above shows, Judge Bates' characterization of the Section 1809 Opinion has already been disclosed. Despite this disclosure, DOJ argues here that *nothing* can be disclosed from the Opinion itself. That argument cannot be sustained. Given the prior disclosure of the subject of the Opinion, no harm will flow from further disclosures — such as the court's legal analysis of the subject — consistent with that previous disclosure.  Moreover, information about illegal surveillance practices cannot be shielded from disclosure under any of FOIA's exemptions. According to Judge Bates' own description, the Section 1809 Opinion addresses NSA collection undertaken "without statutory authority" — collection practices about which the public has a fundamental right to know and a substantial interest in better understanding. Indeed, if FOIA is to serve its core purpose—"to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," *Robbins*, 437 U.S. at 242 — the Opinion clearly cannot be withheld in its entirety.

A.      **Withholding the Section 1809 Opinion in Full is Improper Because the Agency Has Already Officially Disclosed the Substance of the Opinion.**

DOJ cannot continue to withhold the Section 1809 Opinion in full because it has already officially acknowledged and described the content of the Opinion. Accordingly, none of FOIA's exemptions allow the agency to continue to withhold the Opinion in full.

As the D.C. Circuit has noted, allowing the government to withhold information it has already disclosed would "frustrate the pressing policies of the [FOIA] without even arguably advancing countervailing considerations." *Founding Church of Scientology v.*

*NSA*, 610 F.2d 824, 831 (D.C. Cir. 1979); *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1129 (D.C. Cir. 1983). Official disclosure of information works to overcome even an otherwise valid exemption claim. *See Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C. Cir. 1990). Indeed, it "is a matter of common sense that the presence of information in the public domain makes the disclosure of that information less likely to 'cause damage to the national security.'" *Washington Post Co. v. Dep't of Defense*, 766 F. Supp. 1, 9-14 (D.D.C. 1991).

Here, no purpose is served by allowing the agency to withhold the FISC's legal analysis that contributed to its conclusion "that Section 1809(a)(2) precluded the Court from approving the government's proposed use of, among other things, certain data acquired by NSA without statutory authority through its 'upstream collection.'" October 3 Opinion, 2011 WL 10945618, *6 n.15. Inevitably, the FISC's legal analysis — of Section 1809(a)(2)'s preclusive effect, of the statutory authority governing NSA surveillance, and of the NSA's violation of that authority — can be released without implicating any legitimately withheld information the Opinion might otherwise contain.

### B.    None of the Claimed Exemptions Justify Withholding the Section 1809 Opinion in Full.

DOJ asserts a constellation of exemptions in an attempt to shield the Section 1809 Opinion from disclosure. None of the exemptions goes as far as the agency would like.

To justify withholding under Exemption 1 and 3, the agency bears the burden of demonstrating a "logical connection" between the information it seeks to withhold and the claimed exemption. *ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 29 (D.D.C. 1980). While the asserted exemptions allow for the withholding of "intelligence sources and

methods," or information about the NSA's statutorily authorized activities, none authorize the withholding of federal law.[8]

And the withheld FISC Opinion is just that: it is an Opinion, issued by an Article III court, containing an analysis of the NSA's statutory authority and that authority's interaction with 50 U.S.C. § 1809. Defendant seeks to withhold an unknown number of pages of this legal analysis on the basis that disclosure — *of any part* — would reveal "sensitive operational details" or "sources and methods" of government surveillance. Without more, however, this assertion fails even a deferential test of logic.

Critically, the Opinion, itself, cannot be considered an intelligence source or method. *See N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100, 119 (2d Cir. 2014) (approving district court's observation that "legal analysis is not an 'intelligence source or method'"); *see also Berman v. CIA*, 501 F.3d 1136, 1146 (9th Cir. 2007). While the Opinion may *contain* such information, it does not follow that the Opinion can be withheld in its entirety on that basis. Targeted redaction can adequately protect any sensitive information, as recent disclosures amply demonstrate. *See infra* at 13-16.

Indeed, given the topic of the Opinion, the Court should be particularly skeptical of DOJ's withholding claims. The agency may not classify information — and thus may not withhold it under Exemption 1 — to "conceal violations of the law;" to "prevent embarrassment;" "restrain competition;" or to "to prevent or delay the release of

---

[8] It bears emphasizing that Congress passed FOIA to "pierce the veil of administrative secrecy[,]" *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal citation omitted), and combating the development of agency secret law "was the primary target of the [A]ct's disclosure requirements." *Hardy v. ATF*, 631 F.2d 653, 657 (9th Cir. 1980) *Jordan v. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (Bazelon, J., concurring) (noting one of FOIA's "principle purposes" was "to eliminate secret law"). It is against this overarching purpose — the elimination of secret law — that the government's sweeping invocations of FOIA's exemptions must be assessed.

information that does not require protection." E.O. No. 13,526 § 1.7(a); *see Goldberg*,

818 F.2d at 77 (stating court's obligation to "ensure that information *not* be classified"

for improper purposes) (emphasis in original). In light of the Opinion's topic — NSA

surveillance conducted without statutory authority and the implications of FISA's

criminal prohibitions on that surveillance — it is quite conceivable that at least some of

the information withheld under Exemption 1 has been improperly classified. *See* 5 U.S.C.

§ 552(b)(1)(B) (material withheld must be "in fact properly classified pursuant to such

Executive order"). At a minimum, the possibility of improper classification counsels in

favor of heightened scrutiny of the agency's Exemption 1 claims. *Jones v. FBI*, 41 F.3d

238, 242-43 (6th Cir. 1994) (Where evidence of "illegality with regard to the underlying

activities which generated the documents" exists[,] . . . it would be an abdication of the

court's responsibility to treat the case in the standard way[.]").[9]

    The same holds true for DOJ's assertion of the NSA's statutory privilege, 50

U.S.C. § 3605, and Exemption 3. *See* Def. Mem. 27. The protections afforded by the

NSA's privilege extend only to activity that is "*authorized by statute* and not otherwise

---

[9] Any argument against the applicability of Exemption 1 applies with equal force to two
of the government's claimed Exemption 3 statutes. Exemption 3 protects information that
is "specifically exempted from disclosure" by another federal statute. 5 U.S.C. §
552(b)(3). Here, the government relies on three separate statutes—the NSA's statutory
exemption, 50 U.S.C. § 3605; Section 102A(i)(1) of the National Security Act of 1959,
50 U.S.C. §3024(i)(1); and the Espionage Act, 18 U.S.C. § 798. *See* Def. Mot. at 27-28.
However, two of those statutes, 50 U.S.C. § 3024(i)(1) and 18 U.S.C. § 798, only protect
information identical to that protected by Exemption 1 — namely, validly classified
intelligence sources and methods. *See* 50 U.S.C. § 3024(i)(1) (prohibiting disclosure of
"intelligence sources and methods from unauthorized disclosure") and 18 U.S.C. §
798(a), (b) (prohibiting disclosure of "classified information" describing "procedures and
methods" related to communications intelligence). Thus, the arguments against
application of Exemption 1 apply with equal force to withholdings based on Exemption 3
and those statutes. The remaining statute, NSA's statutory exemption (50 U.S.C. § 3605),
which applies to slightly different information, is discussed, *infra*.

unlawful." *See Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1389 (D.C.

Cir. 1979) (emphasis added). The Section 1809 Opinion — as described by Judge Bates

— addresses surveillance activities that *exceeded* the NSA's statutory authority and

implicated the criminal prohibitions on surveillance contained within FISA. The practices

described within the Section 1809 Opinion, therefore, are plainly not "authorized by

statute and not otherwise unlawful." *See Hayden*, 608 F.2d at 1389. Exemption 3,

therefore, cannot bar the Opinion's disclosure in full.

> **D**.     **Collateral Estoppel Does Not Preclude EFF From Seeking Production of the Section 1809 Opinion.**

According to DOJ, EFF is precluded from seeking disclosure of the Section 1809

Opinion because "the parties now before the Court previously litigated, and the court

determined, whether Plaintiff was entitled under FOIA to identification of the FISC

opinion redacted from footnote 15 of the October 2011 FISC opinion." Def. Mem. at 10-

11.[10] As DOJ makes clear, however, the parties only litigated, and Judge Jackson only

determined, that "docket information" for the Section 1809 Opinion could be withheld.

*See* Def. Mot 12 (describing Judge Jackson's determination that redaction of "the docket

number information contained throughout the opinion" was justified).

EFF disputes the applicability of estoppel, generally, to this case. *See*

*Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948) ("[I]f the relevant

facts in the two cases are separable, even though they be similar or identical, collateral

estoppel does not govern the legal issues which recur in the second case."). But, even

---

[10] The government also contends that EFF is precluded from challenging the withholding of "the telecommunications service providers that participate in the government's foreign intelligence collection programs." Def. Mem. at 12. Although this contention similarly lacks merit, the issue — with regard to service providers — is moot: EFF has withdrawn its challenge to the withholding of that information.

assuming it does apply, EFF would only be precluded from arguing for disclosure of the

docketing information previously addressed by Judge Jackson— information for which

EFF has already expressly disclaimed its challenge. *See supra* at 4; Def. Mem. at 6.

In contrast, no court has addressed the withholding of the substance of the Section

1809 Opinion, information that likely differs markedly from the limited "docket

information" at issue in the previous case. *See Lardner v. Dep't of Justice*, 638 F. Supp.

2d 14, 22 (D.D.C. 2009) (noting "the fact that the FOIA requests in the two actions, as

well as the materials responsive to those requests, differ considerably counsels against

application of collateral estoppel"). Because the material requested is wholly different

from that addressed in the prior action, collateral estoppel simply does not apply.

### III.    The Agency Has Failed to Segregate and Release Information from the Section 1809 Opinion.

Not only is it likely the agency has applied its exemptions more broadly than the

law allows, but it has also failed to segregate and release otherwise exempt information

from the Section 1809 Opinion.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be

provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). A

segregability analysis is so vital to FOIA's broad mandate of disclosure that a district

court has an affirmative duty to consider segregability *sua sponte*. *Trans-Pac. Policing

Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). "A district court

that 'simply approve[s] the withholding of an entire document without entering a finding

on segregability, or lack thereof,' errs." *Krikorian v. Dep't of State*, 984 F.2d 461, 467

(D.C. Cir. 1993) (citations omitted).

DOJ's entire justification for withholding the Opinion in full is contained in one paragraph of the Declaration of David Sherman. *See* Sherman Decl., ¶ 52. The agency claims that "in the context of this case, any further disclosure of [the Opinion's] contents could reasonably be expected to reveal classified national security information." Def. Mem. at 37 (citing Sherman Decl., ¶ 52). But the agency fails to explain — or even suggest — what the "context of this case" would reveal about the nature or scope of the Opinion.

DOJ seems to suggest that disclosure of the legal analysis in the Opinion would disclose "particular instances in which the 'Upstream' collection program was used[.]" Sherman Decl., ¶ 52. But the agency makes no attempt to explain how disclosure of the "seemingly mundane" portions could do so. The agency has already disclosed the subject matter of the Opinion; it offers no reason that some information — already-disclosed information about the NSA's upstream surveillance; information about the NSA's statutory authority; information about the FISC's interpretation of FISA's criminal prohibitions — cannot be segregated and released. As described above, the claim that every word, from every page, of an Article III court's opinion whose subject has already been disclosed would "reveal classified national security information" strains credulity.

This is not the first instance in which DOJ has broadly asserted FOIA's exemptions to prevent public disclosure of unflattering information contained within FISC opinions, and the Court should not view the agency's claims here in isolation. Indeed, in two separate cases litigated by EFF involving the withholding of other FISC opinions — *EFF v. Dep't of Justice*, 11-5221-YGR (N.D. Cal.) and *EFF v. Dep't of Justice*, 12-1441-ABJ (D.D.C.) — the agency asserted functionally identical and

14

overbroad claims. *In both cases*, once EFF successfully secured the release of the opinions at issue, it was apparent that the agency's earlier exemption claims went much further than the law allowed.

   For example, in a case concerning significant FISC opinions related to the business records provision of FISA, 50 U.S.C. § 1861, DOJ asserted Exemptions 1 and 3 to shield numerous FISC opinions in full. *See EFF v. Dep't of Justice*, No. 11-5221-YGR (N.D. Cal.). Once disclosed, however, it was clear the agency had used its exemption claims to prevent disclosure of descriptions of repeated violations of the FISC's orders — information that did not describe any sensitive sources or methods and that was readily segregable from any arguably sensitive content. For example, DOJ initially withheld the following sentences under Exemptions 1 and 3:

> ▪ "The Court is exceptionally concerned about what appears to be a flagrant violation of its order in this matter[.]" Order Regarding Preliminary Notice of Compliance Incident at 4-5, *In re Production of Tangible Things*, BR 08-13 (FISC Jan. 28, 2009).
>
> ▪ "[T]he Court must have every confidence that the government is doing its utmost to ensure that those responsible for implementation fully comply with the Court's orders. The Court no longer has such confidence." Order at 12, *In re Production of Tangible Things*, BR 08-13 (FISC March 2, 2009).

As the district court later determined, despite the agency's sweeping exemption claims, the opinions at issue had been withheld "in their entirety when a disclosure of reasonably segregable portions of those documents would have been required." Order Re: Production of Documents for *In Camera* Review at 2, *EFF v. Dep't of Justice*, No. 11- 5221-YGR (N.D. Cal. June 13, 2014) (ECF No. 85) (filed herewith as Exhibit A).

   Likewise, in another case involving a significant FISC opinion — the October 3 Opinion, described above — the agency identically asserted, in litigation with EFF, that

15

the opinion was exempt in its entirety under Exemptions 1 and 3. *See* Pl.'s Cross Motion for Summary Judgment at 10-13, *filed in EFF v. Dep't of Justice*, No. 12-1441-ABJ (D.D.C.) (ECF No. 18) (filed herewith as Exhibit B). After the October 3 Opinion was eventually disclosed, it was again apparent the agency's previous exemption claims were far too broad. For example, the October 3 Opinion contained the full text of the Fourth Amendment—information the agency claimed could not be segregated and released without threatening harm to national security. *See id.* (describing government's withholding of text of Fourth Amendment and other information).

Indeed, another district court judge — in a similar case concerning disclosure of FISC opinions — described the agency's various arguments against disclosure as "dissembling," the "hallmarks of opportunistic rummaging," and "incorrect and inconsistent." *ACLU v. Dep't of Justice*, 59 F. Supp. 3d 584, __ 2014 U.S. Dist. LEXIS 141933, *12-13 (S.D.N.Y. 2014). The Court noted that the government's "assertion on the initial summary judgment motion that segregating non-exempt information in FISC orders would leave only 'unintelligible sentences and phrases' was incorrect," leaving the Court with "little faith in the Government's segregability determinations." *Id.*

Given DOJ's repeated failure to segregate and release readily segregable information from FISC opinions in the past, it is likely the agency has done the same here. Absent some justification that *every word* contained within the Opinion would reveal classified or otherwise exempt information, the Opinion cannot be withheld in full.

## IV. *In Camera* Review Of the Section 1809 Opinion is Necessary.

In conducting its *de novo* review, FOIA empowers the Court to examine "agency records *in camera* to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B). Given the circumstances present here, EFF

16

respectfully submits that *in camera* review of the Opinion is the only appropriate means by which the Court can resolve this case.

There is a "greater call for *in camera* inspection" in "cases that involve a strong public interest in disclosure." *Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980). As the D.C. Circuit has explained, in language particularly pertinent here:

> When citizens request information to ascertain whether a particular agency is properly serving its public function, the agency often deems it in its best interest to stifle or inhibit the probes. It is in these instances that the judiciary plays an important role in reviewing the agency's withholding of information. But since it is in these instances that the representations of the agency are most likely to be protective and perhaps less than accurate, the need for *in camera* inspection is greater.

*Id.* at (D.C. Cir. 1980); *see also Jones*, 41 F.3d at 243 (*in camera* inspection warranted where there is a "*strong public interest* — where the effect of disclosure or exemption clearly extends to the public at large, such as a request which may surface evidence of corruption in an important government function") (emphasis in original).

The Opinion concerns a topic of intense public scrutiny and interest. As noted, the scope, legality, and propriety of the government's current surveillance practices has been vigorously debated, both in this country and abroad, for the past two years. In light of this overriding public interest, the need for *in camera* inspection here is particularly acute. Indeed, in each of the three cases concerning FISC opinions noted above, each court has seen fit to inspect the withheld records *in camera*. *See* Order Re: Production of Documents for *In Camera* Review, *EFF v. Dep't of Justice*, No. 11- 5221-YGR (N.D. Cal. June 13, 2014) (ECF No. 85); Minute Order Mar. 25, 2014, *EFF v. Dep't of Justice*, No. 12-1441-ABJ (D.D.C.); *ACLU v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 141933, *15.

Additionally, courts have found *in camera* review to "be particularly appropriate when . . . the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims . . . " *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *see also Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984). As noted above, although the subject of the Section 1809 Opinion is already publicly known, the agency has been unwilling to provide even the most cursory information about the Opinion—including, even, the number of pages it contains. This, too, counsels in favor of the Court's *in camera* inspection.

Courts have also looked to the number of documents at issue in a case to determine whether *in camera* review is warranted, finding "*[i]n camera* review is particularly appropriate when the documents withheld are brief and limited in number." *Maynard v. CIA*, 986 F.2d 547, 558 (1st Cir. 1993) (citations omitted); *see also Donovan v. FBI*, 806 F.2d 55, 59 (2d Cir. 1986) ("*[I]n camera* inspection has been found to be appropriate when only a small number of documents are to be examined.") (citation omitted). Here, only a single document is at issue, which additionally tilts the balance in favor of *in camera* review.[11]

"A judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt" she wants satisfied before taking "responsibility for a *de novo* determination." *Spirko v. USPS*, 147 F.3d 992, 996 (D.C. Cir. 1998) (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)) (internal quotation marks omitted). EFF respectfully submits that there is ample reason for "doubt" here. Accordingly, EFF urges the Court to order the Opinion produced for its *in camera* inspection.

---

[11] Of course, because the government has not even revealed the number of pages in the Opinion, EFF cannot make representations concerning its length.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment should be

denied in part, and EFF's cross-motion for partial summary judgment should be granted.

June 1, 2015                                                Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
5335 Wisconsin Ave. N.W., Suite
640
Washington, DC 20015
(202) 246-6180

MARK RUMOLD
(admitted in California)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94110
(415) 436-9333

Attorneys for Plaintiff
ELECTRONIC FRONTIER
FOUNDATION