**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>**Defendant.** | ) | **Civil Action No. 14-760 (RMC)** |

## OPINION

Plaintiff Electronic Frontier Foundation seeks the production of an opinion of the Foreign Intelligence Surveillance Court under the Freedom of Information Act. The document is exempt from disclosure under Exemptions 1 and 3 because the opinion is properly classified and because its disclosure is prohibited by statute. Summary judgment will be entered in favor of the Department of Justice.

## I. FACTS

Electronic Frontier Foundation (EFF) is a non-profit corporation whose mission is to inform policymakers and the public about civil liberty issues related to technology and to defend such liberties. Compl. [Dkt. 1] ¶ 4. "In support of its mission, EFF uses the Freedom of Information Act to obtain and disseminate information concerning the activities of federal agencies." *Id*. EFF submitted four requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to the National Security Division of the Department of Justice (DOJ):

> (1) August 23, 2013 request seeking disclosure of two Foreign Intelligence Surveillance Court (FISC) opinions;

(2) October 31, 2013 request seeking disclosure of two FISC opinions and associated documents;

(3) February 24, 2014 request seeking disclosure of any still secret Foreign Intelligence Court of Review (FISCR) decisions and any opinion and orders of the U.S. Supreme Court in any matter appealed from the FISCR; and

(4) March 14, 2014 request seeking disclosure of three separate FISC opinions and related documents.

DOJ granted EFF's request for expedited processing on April 10, 2014,[1] and EFF filed this suit on May 1, 2014. DOJ produced various documents, and EFF withdrew most of its requests. At this point, EFF challenges only the withholding of a single document—a specific FISC opinion.[2]

The opinion in question, referred to here as the Section 1809 Opinion, held that 50 U.S.C. § 1809(a)(2) precluded the FISC from approving the Government's proposed use of certain data acquired by the National Security Agency (NSA) without statutory authority through "Upstream" collection.[3] EFF is aware of the holding of the Section 1809 Opinion because it was referenced in an October 3, 2011 FISC opinion[4] that was released to EFF in the course of a

---

[1] FOIA requires agencies to provide expedited processing of requests for records (1) where the requester has demonstrated a compelling need or (2) where the agency determines expedition is appropriate. 5 U.S.C. § 552(a)(6)(E). DOJ's regulations provide for expedited processing where, for example, there is an urgency to inform the public about alleged government activity, there is loss of a substantial due process right, or there is widespread and exceptional media interest regarding a question of government integrity. 28 C.F.R. § 16.5(e)(1).

[2] Because EFF has conceded the withholding of all other documents, its cross motion for summary judgment is a partial motion.

[3] "Upstream" collection refers to the acquisition of Internet communications as they transit the "internet backbone," *i.e.*, principal data routes via internet cables and switches of U.S. internet service providers. *See* [Caption Redacted], 2012 WL 9189263, *1 (FISC Aug. 24, 2012); *see also* https://en.wikipedia.org/wiki/Upstream_collection (last visited Oct. 19, 2015); https://en.wikipedia.org/wiki/Internet_backbone (last visited Oct. 19, 2015).

[4] The October 3, 2011 FISC opinion, authored by Judge John Bates and released in August 2013, stated:

different FOIA lawsuit— *Electronic Frontier Foundation v. DOJ*, 57 F. Supp. 3d 54 (D.D.C. 2014). In that FOIA suit, Judge Amy Berman Jackson held that DOJ properly withheld the citation to the Section 1809 Opinion because the information was classified and exempt from disclosure under FOIA Exemption 1. *Id*. at 61.

DOJ seeks summary judgment on the ground that the Section 1809 Opinion is subject to withholding under Exemptions 1 and 3. *See* Mot. for Summ. J. [Dkt. 15] (MSJ); DOJ Reply [Dkt. 18]. EFF filed a cross motion for partial summary judgment. *See* Cross Mot. for Summ. J. [Dkt. 17] (XMSJ); EFF Reply [Dkt. 20].

## II. LEGAL STANDARD

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). Federal Rule of Civil Procedure 56 provides that summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted

---

> The government's revelations regarding the scope of NSA's upstream collection implicate 50 U.S.C. § 1809(a), which makes it a crime (1) to "engage[ ] in electronic surveillance under color of law except as authorized" by statute or (2) to "disclose[ ] or use [ ] information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized" by statute. ***See [redacted]*** (concluding that Section 1809(a)(2) precluded the Court from approving the government's proposed use of, among other things, certain data acquired by NSA without statutory authority through its "upstream collection"). The Court will address Section 1809(a) and related issues in a separate order.

[Caption Redacted], 2011 WL 10945618, at *6 n.15 (FISC Oct. 3, 2011) (emphasis added).

against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

In a FOIA case, the burden is on the agency to sustain its action and the district court must decide de novo whether an agency properly withheld information under a claimed exemption. 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). "The underlying facts are viewed in the light most favorable to the [FOIA] requester," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983), and the exemptions are narrowly construed, *FBI v. Abramson*, 456 U.S. 615, 630 (1982). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

A court may award summary judgment solely on the basis of information provided by the department or agency in affidavits describing "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project*, 656 F.2d at 738; *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). Affidavits submitted by

the agency to demonstrate the adequacy of its response are presumed to be in good faith, *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981), "which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

## III. ANALYSIS

### A. Collateral Estoppel

DOJ contends that EFF should be collaterally estopped from seeking the release of the Section 1809 Opinion because EFF already litigated, and lost, prior FOIA requests for (1) docket information regarding the Section 1809 Opinion, *see Electronic Frontier Foundation v. DOJ*, 57 F. Supp. 3d at 61, and (2) the identity of telecommunications service providers who participated in NSA's call records collection program, *see Electronic Frontier Foundation v. DOJ*, Case No. 4:11-cv-5221-YGR, 2014 WL 3945646, at *5-7 (N.D. Cal. Aug. 11, 2014). Under the doctrine of collateral estoppel, also known as issue preclusion, an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1993); *Johnson v. Duncan*, 746 F. Supp. 2d 163, 168 (D.D.C. 2010). In this case, EFF seeks the release of the Section 1809 Opinion itself. Because

the issue of DOJ's withholding the Section 1809 Opinion has not been actually litigated and necessarily decided, collateral estoppel does not apply.[5]

**B. Exemption 1**

Under Exemption 1, FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). DOJ relies upon Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), which governs the classification and protection of national security information, to withhold the Section 1809 Opinion. Information can be properly classified under E.O. 13526 if four requirements are met: (1) an original classification authority has classified the information; (2) the United States Government owns, produces, or controls the information; (3) the information pertains to one or more of eight protected categories listed in Section 1.4 of the Executive Order, which include intelligence methods;[6] and (4) the original

---

[5] EFF has expressly agreed in this litigation not to seek docket information, the date of the Section 1809 Opinion, or the names or descriptions of surveillance targets. *See* MSJ at 6; EFF Reply at 2; Sherman Decl. [Dkt. 15-4] ¶ 9 n.1.

[6] Section 1.4 of Executive Order 13526 describes the classification categories as follows:

> Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security in accordance with section 1.2 of this order, and it pertains to one or more of the following:
>
> (a) military plans, weapons systems, or operations;
>
> (b) foreign government information;
>
> (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology;

classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damage. E.O. 13526 § 1.1(a). David Sherman, Associate Director for Policy and Records at the National Security Agency, submitted declarations in support of DOJ's withholding of the Section 1809 Opinion. *See* Sherman Decl. [Dkt. 15-4]; Sherman Supp. Decl. [Dkt. 18-1]. Through these declarations, DOJ made an affirmative showing that (1) the Section 1809 Opinion was classified by an original classification authority, (2) the Opinion is owned, produced, or controlled by the U.S. Government, (3) the information pertains to three of the protected categories listed in Executive Order 13526—intelligence methods, foreign activities, and systems related to national security; and (4) disclosure could reasonably be expected to result in damage to national security. *See* Sherman Decl. ¶¶ 2, 15, 46-47, 52. Mr. Sherman explained that DOJ withheld the Section 1809

---

> (d) foreign relations or foreign activities of the United States, including confidential sources;
>
> (e) scientific, technological, or economic matters relating to the national security;
>
> (f) United States Government programs for safeguarding nuclear materials or facilities;
>
> (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security;
>
> or (h) the development, production, or use of weapons of mass destruction.

E.O. 13526 § 1.4.

Opinion in full under FOIA Exemption 1 "because the release of any portion of that document would tend to reveal information that is currently and properly classified at the Top Secret level, specifically, an intelligence method." Sherman Supp. Decl. ¶ 8. With regard to the fact that disclosure could be expected to result in damage to national security, Mr. Sherman indicated that:

> 47. Specifically, the release of the redacted information would disclose sensitive operational details associated with NSA's "Upstream" collection capability. While certain information regarding NSA's "Upstream" collection capability has been declassified and publicly disclosed, certain other information regarding the capability remains currently and properly classified. The redacted information would reveal specific details regarding the application and implementation of the "Upstream" collection capability that have not been publicly disclosed. Revealing the specific means and methodology by which certain types of SIGINT collections are accomplished could allow adversaries to develop countermeasures to frustrate NSA's collection of information crucial to national security. Disclosure of this information could reasonably be expected to cause exceptionally grave damage to the national security. I have reviewed this information and determined that it is currently and properly classified as Top Secret and falls within Sections 1.4(c), 1.4(d), and 1.4(g) of E.O. 13526.
>
> . . .
>
> 52. With respect to the FISC opinion withheld in full, it is my judgment that any information in the [Section 1809 Opinion] is classified in the context of this case because it can reasonably be expected to reveal classified national security information concerning particular intelligence methods, given the nature of the document and the information that has already been released. . . . In these circumstances, the disclosure of even seemingly mundane portions of this FISC opinion would reveal particular instances in which the "Upstream" collection program was used and could reasonably be expected to encourage sophisticated adversaries to adopt countermeasures that may deprive the United States of critical intelligence.

Sherman Decl. ¶¶ 47, 52.

Through the Sherman Declarations,[7] DOJ has sustained its burden of showing that the Section 1809 Opinion is classified and that it properly withheld the document under FOIA Exemption 1.[8] *See Larson*, 565 F.3d at 865 ("If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.").

EFF argues that while the Section 1809 Opinion was classified, it has been officially disclosed and thus it should be released. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (official disclosure of classified information overcomes an otherwise valid exemption claim). EFF insists that DOJ cannot continue to withhold the Section 1809 Opinion in full because "it has already officially acknowledged and described the content of the Opinion." *See* Opp'n [Dkt. 16] at 8. The alleged official acknowledgement is the 2011 FISC opinion's statement of the Section 1809 Opinion's holding, *i.e.*, that "Section 1809(a)(2) precluded the Court from approving the government's proposed use of, among other things,

[7] The Court also reviewed the Classified Sherman Declaration and Classified Supplemental Sherman Declaration. *See* Notice [Dkt. 15-6] (DOJ lodged ex parte submission of Classified Sherman Declaration with Classified Information Security Officer); Notice [Dkt. 18-1] (DOJ lodged ex parte submission of Classified Supplemental Sherman Declaration with Classified Information Security Officer).

[8] FOIA Exemption 3, 5 U.S.C. § 552(b)(3) protects from disclosure information that is exempted by another statute. Exemption 3 applies here as well. *See* Sherman Decl. ¶ 48 (the Section 1809 Opinion includes technical information about how NSA accomplishes its SIGINT mission, and thus it is protected from disclosure under Exemption 3 and under the National Security Act, 50 U.S.C. §§ 3605, 3024(i)(1), exempting from disclosure NSA functions, activities, intelligence sources, and methods); Sherman Supp. Decl. ¶ 13 (the Section 1809 Opinion is also protected from release under 18 U.S.C. § 798, which exempts communications intelligence activities and information obtained through communications intelligence).

certain data acquired by NSA without statutory authority through its 'Upstream collection.'" [Caption Redacted], 2011 WL 10945618, at *6 n.15 (FISC Oct. 3, 2011).

Classified information may be disclosed over Government objection if the information has been "officially acknowledged," that is, if (1) the same (2) specific information (3) already has been "made public through an official and documented disclosure." *Fitzgibbon*, 911 F.2d at 765 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)). "These criteria are important because they acknowledge the fact that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures." *Id*. The D.C. Circuit has emphasized that "'[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure. This insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs.'" *Am. Civil Liberties Union v. DoD*, 628 F.3d 612, 621 (2011) (quoting *Wolf*, 473 F.3d at 378). Because the specific content of the Section 1809 Opinion has not been officially and publicly disclosed, the Opinion may be properly withheld under Exemption 1.

**C. Segregability**

Even if an agency properly withholds responsive records under a FOIA exemption, it nevertheless must disclose any non-exempt information that is "reasonably segregable." 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead*, 566 F.2d at 260; *see also Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). A district court need not "order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead*, 566 F.2d at

261 n. 55. An agency cannot rely on mere conclusory statements that non-exempt material in a document is not reasonably segregable, but instead it must provide a reasonably detailed justification, except where "such a detailed justification . . . would itself compromise the secret nature of potentially exempt information." *Id*. at 261. Nonetheless, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). A district court has "an affirmative obligation to consider segregability sua sponte." *Trans-Pacific Policing Agreement*, 177 F.3d at 193.

EFF asserts that the legal analysis in the Section 1809 Opinion should be released because doing so would not implicate any legitimately withheld information. EFF surmises that the Section 1809 Opinion contains the following information that is not classified: FISC's legal analysis of Section 1809(a)(2)'s preclusive effect, the statutory authority governing NSA surveillance, and NSA's violation of that authority. *See* Opp'n at 9; *see also id*. at 10 (assuming that the Opinion contains "an analysis of the NSA's statutory authority and that authority's interaction with 50 U.S.C. § 1809"). EFF further hypothesizes that the Section 1809 Opinion contains information that was not properly classified.

EFF has not offered any support for these claims. The Court presumes that the Sherman affidavits were filed in good faith, *see Ground Saucer Watch*, 692 F.2d at 771, and this presumption is not rebutted by purely speculative claims, *see SafeCard*, 926 F.2d at 1200.

Further, EFF's argument is substantially undermined by the reality that legal analysis is meaningless without facts. Legal analysis *necessarily* includes facts, and in this case those facts are classified. As Mr. Sherman indicated, the withheld information would reveal specific details regarding the application and implementation of the "Upstream" collection

capability and would reveal the specific means and methodology by which certain types of SIGINT collections are accomplished. Sherman Decl. ¶¶ 47, 52. Mr. Sherman stressed that "[i]n these circumstances, the disclosure of even seemingly mundane portions of this FISC opinion would reveal particular instances in which the 'Upstream' collection program was used and could reasonably be expected to encourage sophisticated adversaries to adopt countermeasures that may deprive the United States of critical intelligence." *Id*. ¶ 52. *See Larson*, 565 F.3d at 864 ("Minor details of intelligence information may reveal more information than their apparent insignificance suggests because much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself.") (internal quotations and citations omitted).

Relying on the Sherman Declarations, the Court finds that disclosure of any part of the Section 1809 Opinion could reasonably be expected to cause grave damage to national security. The document has been properly withheld in its entirety under Exemption 1.

**IV. CONCLUSION**

For the reasons set forth above, the motion for summary judgment filed by the Department of Justice [Dkt. 15] will be granted, and the cross motion for partial summary judgment filed by the Electronic Frontier Foundation [Dkt. 17] will be denied. Judgment will be entered in favor of the Department of Justice. A memorializing Order accompanies this Opinion.

Date: October 30, 2015

/s/
ROSEMARY M. COLLYER
United States District Judge